Justice SOTOMAYOR delivered the opinion of the Court.
The Bankruptcy Code prohibits debtors from discharging debts “obtained by ... false pretenses, a false representation, or actual fraud.” 11 U.S.C. § 523(a)(2)(A). The Fifth Circuit held that a debt is “obtained by ... actual fraud” only if the debtor’s fraud involves a false representa-, tion to a creditor. That ruling deepened an existing split among the Circuits over whether “actual fraud” requires a false representation or whether it encompasses other traditional forms of fraud that can be accomplished without a false representation, such as a fraudulent conveyance of property made to evade payment to creditors. We granted certiorari to resolve that split and now reverse.
I
Husky International Electronics, Inc., is a Colorado-based supplier of components used in electronic devices. Between 2003 and 2007, Husky sold its products to Chrysalis Manufacturing Corp., and Chrysalis incurred a debt to Husky of $163,999.38. During the same period, respondent Daniel Lee Ritz, Jr., served as a director of Chrysalis and owned at least 30% of Chrysalis’ common stock.
All parties agree that between 2006 and 2007, Ritz drained Chrysalis of assets it could have used to pay its debts to creditors like Husky by transferring large sums of Chrysalis’ funds to other entities Ritz controlled. For instance — and Ritz’ actions were by no means limited to these examples — Ritz transferred $52,600 to CapNet Risk Management, Inc., a company he owned in full; $121,831 to CapNet Securities Corp., a company in which he owned an 85% interest; and $99,386.90 to Dynalyst Manufacturing Corp., a company in which he owned a 25% interest.
In May 2009, Husky filed a lawsuit against Ritz seeking to hold him personally responsible for Chrysalis’ $163,999.38 debt. Husky argued that Ritz’ intercompany-transfer scheme was “actual fraud” for purposes of a Texas law that allows creditors to hold shareholders responsible for corporate debt. See Tex. Bus. Orgs. Code Ann. § 21.223(b) (West 2012). In December. 2009, Ritz filed for Chapter 7 bankruptcy in the United States Bankruptcy Court for the Southern District of Texas. Husky then initiated an adversarial proceeding in Ritz’ bankruptcy case again seeking to hold Ritz personally liable for Chrysalis’ debt. Husky also contended that Ritz could not discharge that debt in bankruptcy because the same intercompa-ny-transfer scheme constituted “actual fraud” under 11 U.S.C. § 523(a)(2)(A)’s exemption to discharge.[1]
The District Court held that Ritz was personally liable for the debt under Texas law, but that the debt was not “obtained by ... actual fraud” under § 523(a)(2)(A) and could be discharged in his bankruptcy.
The Fifth Circuit affirmed. It did not address whether Ritz was responsible for Chrysalis’ debt under Texas law because it agreed with the District Court that Ritz *1586 did not commit “actual fraud” under § 523(a)(2)(A). Before the Fifth Circuit, Husky argued that Ritz’ asset-transfer scheme was effectuated through a series of fraudulent conveyances — or transfers intended to obstruct the collection of debt. And, Husky said, such transfers are a recognizable form of “actual fraud.” The Fifth Circuit disagreed, holding that a necessary element of “actual fraud” is a misrepresentation from the debtor to the creditor, as when a person applying for credit adds an extra zero to her income or falsifies her employment history. In re Ritz, 787 F.3d 312, 316 (2015). In transferring Chrysalis’ assets, Ritz may have hindered Husky’s ability to recover its debt, but the Fifth Circuit found that he did not make any false representations to Husky regarding those assets or the transfers and therefore did not commit “actual fraud.”
We reverse. The term “actual fraud” in § 523(a)(2)(A) encompasses forms of fraud, like fraudulent conveyance schemes, that can be effected without a false representation.
II
A
Before 1978, the Bankruptcy Code prohibited debtors from discharging debts obtained by “false pretenses or false representations.” § 35(a)(2) (1976 ed.). In the Bankruptcy Reform Act of 1978, Congress added “actual fraud” to that list. 92 Stat. 2590. The prohibition now reads: “A discharge under [Chapters 7, 11,12, or 13] of this title does not discharge an individual debtor from any debt ... for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by ... false pretenses, a false representation, or actual fraud.” § 523(a)(2)(A) (2012 ed.).
When “ ‘Congress acts to amend a statute, we presume it intends its amendment to have real and substantial effect.’” United States v. Quality Stores, Inc., 572 U.S. -, -, 134 S.Ct. 1395, 1401, 188 L.Ed.2d 413 (2014). It is therefore sensible to start with the presumption that Congress did not intend “actual fraud” to mean the same thing as “a false representation,” as the Fifth Circuit’s holding suggests. But the historical meaning of “actual fraud” provides even stronger evidence that the phrase has long encompassed the kind of conduct alleged to have occurred here: a transfer scheme designed to hinder the collection of debt.
This Court has historically construed the terms in § 523(a)(2)(A) to contain the “elements that the common law has defined them to include.” Field v. Mans, 516 U.S. 59, 69, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995). “Actual fraud” has two parts: actual and fraud. The word “actual” has a simple meaning in the context of common-law fraud: It denotes any fraud that “involv[es] moral turpitude or intentional wrong.” Neal v. Clark, 95 U.S. 704, 709, 24 L.Ed. 586 (1878). “Actual” fraud stands in contrast to “implied” fraud or fraud “in law,” which describe acts of deception that “may exist without the imputation of bad faith or immorality.” Ibid. Thus, anything that counts as “fraud” and is done with wrongful intent is “actual fraud.”
Although “fraud” connotes deception or trickery generally, the term is difficult to define more precisely. See 1 J. Story, Commentaries on Equity Jurisprudence § 189, p. 221 (6th ed. 1853) (Story) (“Fraud ... being so various in its nature, and so extensive in its application -to human concerns, it would be difficult to enumerate all the instances in which Courts of *1587 Equity will grant relief under this head”). There is no need to adopt a definition for all times and all circumstances here because, from the beginning of English bankruptcy practice, courts and legislatures have used the term “fraud” to describe a debtor’s transfer of assets that, like Ritz’ scheme, impairs a creditor’s ability to collect the debt.
One of the first bankruptcy acts, the Statute of 13 Elizabeth, has long been relied upon as a restatement of the law of so-called fraudulent conveyances (also known as “fraudulent transfers” or “fraudulent alienations”). See generally G. Glenn, The Law of Fraudulent Conveyances 89-92 (1931). That statute, also called the Fraudulent Conveyances Act of 1571, identified as fraud “faigned covenous and fraudulent Feoffmentes Gyftes Grauntes Alienations [and] Conveyaunces” made with “Intent to delaye hynder or defraude Creditors.” 13 Eliz. ch. 5. In modern terms, Parliament made it fraudulent to hide assets from creditors by giving them to one’s family, friends, or associates. The principles of the Statute of 13 Elizabeth — and even some of its language— continue to be in wide use today. See BFP v. Resolution Trust Corporation, 511 U.S. 531, 540, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994) (“The modem law of fraudulent transfers had its origin in the Statute of 13 Elizabeth”); id., at 541, 114 S.Ct. 1757 (“Every American bankruptcy law has incorporated a fraudulent transfer provision”); Story § 353, at 393 (“[T]he statute of 13 Elizabeth ... has been universally adopted in America, as the basis of our jurisprudence on the same subject”); Boston Trading Group, Inc. v. Burnazos, 835 F.2d 1504, 1505-1506 (C.A.1 1987) (Breyer, J.) (“Mass. Gen. Laws ch. 109A, §§ 1-13 ... is a uniform state law that codifies both common and statutory law stretching back at least to 1571 and the Statute of Elizabeth”). The degree to which this statute remains embedded in laws related to fraud today clarifies that the common-law term “actual fraud” is broad enough to incorporate a fraudulent conveyance.
Equally important, the common law also indicates that fraudulent conveyances, although a “fraud,” do not require a misrepresentation from a debtor to a creditor. As a basic point, fraudulent conveyances are not an inducement-based fraud. Fraudulent conveyances typically involve “a transfer to a close relative, a secret transfer, a transfer of title without transfer of possession, or grossly inadequate consideration.” BFP, 511 U.S., at 540-541, 114 S.Ct. 1757 (citing Twyne’s Case, 3 Co. Rep. 80b, 76 Eng. Rep. 809 (K.B. 1601)); O. Bump, Fraudulent Conveyances: A Treatise Upon Conveyances Made by Debtors To Defraud Creditors 31-60 (3d ed. 1882). In such cases, the fraudulent conduct is not in dishonestly inducing a creditor to extend a debt. It is in the acts of concealment and hindrance. In the fraudulent-conveyance context, therefore, the opportunities for a false representation from the debtor to the creditor are limited. The debtor may have the opportunity to put forward a false representation if the creditor inquires into the whereabouts of the debtor’s assets, but that could hardly be considered a defining feature of this kind of fraud.
Relatedly, under the Statute of 13 Elizabeth and the laws that followed, both the debtor and the recipient of the conveyed assets were liable for fraud even though the recipient of a fraudulent conveyance of course made no representation, true or false, to the debtor’s creditor. The famous Twyne’s Case, which this Court relied upon in BFP, illustrates this point. See Twyne’s Case, 76 Eng. Rep., at 823 (convicting Twyne of fraud under the Statute of 13 Elizabeth, even though he was *1588 the recipient of a debtor’s conveyance). That principle underlies the now-common understanding that a “conveyance which hinders, delays or defrauds creditors shall be void as against [the recipient] unless ... th[at] party ... received it in good faith and for consideration.” Glenn, Law of Fraudulent Conveyances § 233, at 312. That principle also underscores the point that a false representation has never been a required element of “actual fraud,” and we decline to adopt it as one today.
B
Ritz concedes that fraudulent conveyances are a form of “actual fraud,”[2] but contends that 11 U.S.C. § 523(a)(2)(A)’s particular use of the phrase means something else. Ritz’ strained reading of the provision finds little support.
First, Ritz contends that interpreting “actual fraud” in § 523(a)(2)(A) to encompass fraudulent conveyances would render duplicative two other exceptions to discharge in § 523. Section 523(a)(4) exempts from discharge “any debt ... for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny.” And § 523(a)(6) exempts “any debt ,.. for willful and malicious injury by the debtor to another entity or to the property of another entity.”
Ritz makes the unremarkable point that the traditional definition of “actual fraud” will cover some of the same conduct as those exceptions: for example, a trustee who fraudulently conveys away his trust’s assets. But Ritz’ interpretation does not avoid duplication, nor does our interpretation fail to preserve a meaningful difference between § 523(a)(2)(A) and §§ 523(a)(4), (6). Just as a fiduciary who engages in a fraudulent conveyance may find his debt exempted from discharge under either § 523(a)(2)(A) or § 523(a)(4), so too would a fiduciary who engages in one of the fraudulent misrepresentations that form the core of Ritz’ preferred interpretation of § 523(a)(2)(A). The same is true for § 523(a)(6). The debtors who commit fraudulent conveyances and the debtors who make false representations under § 523(a)(2)(A) could likewise also inflict “willful and malicious injury” under § 523(a)(6). There is, in short, overlap, but that overlap appears inevitable.
And, of course, our interpretation of “actual fraud” in § 523(a)(2)(A) also preserves meaningful .distinctions between that provision and §§ 523(a)(4), (a)(6). Section 523(a)(4), for instance, covers only debts for fraud while, acting as a fiduciary, whereas § 523(a)(2)(A) has no similar limitation. Nothing in our interpretation' alters that distinction. And § 523(a)(6) covers debts “for willful and malicious injury,” whether or not that injury is the result of fraud, see Kawaauhau v. Geiger, 523 U.S. 57, 61, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998) (discussing injuries resulting from “ ‘intentional torts’ ”), whereas § 523(a)(2)(A) covers only fraudulent acts. Nothing in our interpretation alters that distinction either. Thus, given the clear differences between these provisions, we see no reason to craft an artificial definition of “actual fraud” merely to avoid narrow redundancies in § 523 that appear unavoidable.
Ritz also says that our interpretation creates redundancy with a separate section of the Bankruptcy Code, § 727(a)(2), which prevents a debtor from discharging all of his debts if, within the *1589 year preceding the bankruptcy petition, he “transferred, removed,, destroyed, mutilated, or concealed” property “with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property.” Although the two provisions could cover some of the same conduct, they are meaningfully different. Section 727(a)(2) is broader than § 523(a)(2)(A) in scope — preventing an offending debtor from discharging all debt in bankruptcy. But it is narrower than § 523(a)(2)(A) in timing — applying only if the debtor fraudulently conveys assets in the year preceding the bankruptcy filing. In short, while § 727(a)(2) is a blunt remedy for actions that hinder the entire bankruptcy process, § 523(a)(2)(A) is a tailored remedy for behavior connected to specific debts.
Ritz’ next point of resistance rests on § 523(a)(2)(A)’s requirement that the relevant debt be “for money, property, services, or ... credit ... obtained by ... actual fraud.” (Emphasis added.) The argument, which the dissent also emphasizes, has two parts: First, it posits that fraudulent conveyances (unlike other forms of actual fraud) cannot be used to “obtai[n]” debt because they function instead to hide valuables that a debtor already possesses. Brief for Respondent 20, 31. There is, the dissent says, no debt at the end of a fraudulent conveyance that could be said to “ ‘resul[t] from’ ” or be “ ‘traceable to’ ” the fraud. Post, at 1591 (quoting Field, 516 U.S., at 61, 64, 116 S.Ct. 437). Second, it urges that “actual fraud” not be interpreted to encompass forms of fraud that are incompatible with the provision’s “obtained by” requirement.
It is of course true that the transferor does not “obtai[n]” debts in a fraudulent conveyance. But the recipient of the transfer — who, with the requisite intent, also commits fraud — can “obtai[n]” assets “by” his or her participation in the fraud. See, e.g., McClellan v. Cantrell, 217 F.3d 890 (C.A.7 2000); see also supra, at 1587 -1588. If that recipient later files for bankruptcy, any debts “traceable to” the fraudulent conveyance, see Field, 516 U.S., at 61, 116 S.Ct. 437; post, at 1591, will be nondischargable under § 523(a)(2)(A). Thus, at least sometimes a debt “obtained by” a fraudulent conveyance scheme could be nondischargeable under § 523(a)(2)(A). Such circumstances may be rare because a person who receives fraudulently conveyed assets is not necessarily (or even likely to be) a debtor on the verge of bankruptcy,[3] but they make clear that fraudulent conveyances are not wholly incompatible with the “obtained by” requirement.
The dissent presses further still, contending that the phrase “obtained by ... actual fraud” requires not only that the relevant debts “resul[t] from” or be “traceable to” fraud but also that they “result from fraud at the inception of a credit transaction.” Post, at 1591 (emphasis added). Nothing in the text of § 523(a)(2)(A) supports that additional requirement. The dissent bases its conclusion on this Court’s opinion in Field, in which the Court noted that certain forms of bankruptcy fraud require a degree of direct reliance by a creditor on an action taken by a debtor. But Field discussed such “reliance” only in setting forth the requirements of the form of fraud alleged in that case — namely, fraud perpetrated through a misrepresentation to a creditor. *1590 See 516 U.S., at 61, 116 S.Ct. 437. The Court was not establishing a “reliance” requirement for frauds that are not premised on such a misrepresentation.
Finally, Ritz argues that Congress added the phrase “actual fraud” to § 523(a)(2)(A) not to expand the exception’s reach, but to restrict it. In Ritz’ view, “actual fraud” was inserted as the last item in a disjunctive list — “false pretenses, a false representation, or actual fraud” — in order to make clear that the “false pretenses” and “false representation[s]” covered by the provision needed to be intentional. Brief for Respondent 29-31. Ritz asks us, in other words, to ignore what he believes is Congress’ “imprudent use of the word ‘or,’ ” id., at 32, and read the final item in the list to modify and limit the others. In essence, he asks us to change the word “or” .to “by.” That is an argument that defeats itself. We can think of no other example, nor could petitioner point to any at oral argument, in which this Court has attempted such an unusual statutory modification.
^
Because we must give the phrase “actual fraud” in § 523(a)(2)(A) the meaning it has long held, we interpret “actual fraud” to encompass fraudulent conveyance schemes, even when those schemes do not involve a false representation. We therefore reverse the judgment of the Fifth Circuit and remand the case for further proceedings consistent with this opinion.

So ordered.

. Husky also alleged that Ritz’ debt should be exempted from discharge under two other exceptions, see 11 U.S.C. § 523(a)(4) (excepting debts for fraud "while acting in a fiduciary capacity”); § 523(a)(6) (excepting debts for "willful and malicious injury”), but does not press those claims in this petition,

. See Tr. of Oral Arg. 30 (Justice KAGAN: "[Y]ou’re not contesting that fraudulent conveyance is a form of actual fraud; is that right?” Ms. Murphy: ”[Y]es, that’s right”); id., at 27 (Ms. Murphy: ”[T]o be clear, we don’t dispute that fraudulent conveyance is a form of actual fraud”).

. Ritz’ situation may be unusual in this regard because Husky contends that Ritz was both the transferor and the transferee in his fraudulent conveyance scheme, having transferred Chrysalis assets to other companies he controlled. We take no position on that contention here and leave it to the Fifth Circuit to decide on remand whether the debt to Husky was "obtained by” Ritz' asset-transfer scheme.