IN RE: Dwayne Renaldo SUTTON and Joscelyn Renee Sutton, Debtors.

Mark Allen Veazey, Sr., Plaintiff,

v.

Dwayne Renaldo Sutton, Defendant.

CASE NO. 14–73364–WLH
ADV. PROC. NO. 15–5092

United States Bankruptcy Court,
N.D. Georgia, Atlanta Division.

Signed June 2, 2016

Theodore H. Lackland, Lackland & Associates, LLC, Marietta, GA, for Plaintiff.

Richard K. Valldejuli, Jr., Valldejuli & Associates, LLC, Atlanta, GA, for Defendant.

## ORDER AFTER TRIAL

Wendy L. Hagenau, U.S. Bankruptcy Court Judge

This dischargeability action under Section 523 arose from an alleged conversion of a security business which resulted in a $15,000 state judgment against the Debtor, Dwayne Sutton. This Court has jurisdiction over this matter under 28 U.S.C. §§ 1334 and 157. This is a core matter pursuant to 28 U.S.C. § 157(b)(2)(I).

## FINDINGS OF FACT

Plaintiff Mark Veazey, Sr. ("Veazey") and Debtor Dwayne Sutton ("Sutton") attended the Atlanta Police Academy together. Both became officers with the Atlanta Police Department. Veazey resigned from the Atlanta Police Department in 2005, but

Sutton remains a detective with the Atlanta Police Department. After his resignation from the police department, Veazey served as a pilot and security personnel for Aliaune Thiam ("Akon") who is an R & B singer. While working with Akon, Veazey also worked with Andrew Bryan ("Bryan"), who had his own security company and also worked with Akon. At some point, Sutton worked with Bryan's security company. Sutton also worked on a contract basis with Crime Prevention Agency, Inc. ("CPA") from time to time, providing security at certain apartment buildings. Several years prior to the events at issue, Sutton was terminated from CPA.

In July 2010, CPA was incorporated. The initial records of the Georgia Secretary of State show that Akon was the CEO, Bryan was the CFO, Lamonte Swann was the secretary, and Miles Cowan was the agent. Mr. Swann was a "computer guy" that the parties knew, and Mr. Cowan was the attorney who incorporated the company. Veazey testified he was the sole owner of the company notwithstanding the fact that he held no position as an officer. He stated that Bryan "assisted" Veazey with the incorporation and with the paperwork.

In October 2010, Veazey was added to the Secretary of State's records as the agent (replacing Mr. Cowan) and as the CFO (replacing Bryan). On February 18, 2012, Veazey amended the Secretary of State filings to make himself the CEO (replacing Akon) and to make his 10–year-old son the Secretary. After this amendment, Veazey was the CEO, CFO, and Agent and his minor son was the secretary. Veazey testified the changes were needed because he wanted to transfer certain contracts to CPA and his name needed to show up on the corporate records. Veazey was the only person associated with CPA who held a security license issued by the State of Georgia. Veazey understood he had to be an officer of CPA to use his security license on behalf of CPA. In December 2012, Veazey opened a bank account for CPA at Wells Fargo. Prior to that time, CPA had banked with SunTrust. The first deposit into the Wells Fargo account occurred in January 2013. The bank records reflect Veazey as the sole owner of the company.

The events giving rise to Veazey's claim all occurred in May 2013. On May 6, 2013, CPA held a board meeting, attended by Bryan, Sutton, and Heidi Hintz (CPA's office manager). Bryan attended the meeting telephonically. At the meeting, various participants expressed their understanding that Veazey merely held a license on behalf of the company and was not its owner. Participants were concerned that Veazey had made changes to the state records. Particular concern arose over Veazey appointing his 10–year-old son as an officer. The participants were also concerned that Veazey had moved the bank accounts to Wells Fargo but had not put Bryan's name on all the Wells Fargo Accounts. Finally, Veazey's use of company money was also of concern.

As a result, Sutton was elected as president of CPA, Akon as CEO, Ms. Hintz as vice president, and Bryan as chairman of the board. Changes were made to the Secretary of State's records on May 15, 2013 to reflect Sutton as the CEO, Akon as the CFO, and Ms. Hintz's husband as the secretary. Sutton authorized these changes to the Secretary of State's records, although he did not physically make the changes.

On the same day, Sutton and Heidi Hintz visited Wells Fargo and informed the bank that Veazey had been replaced at CPA. As proof of his termination, Sutton and Heidi Hintz provided the board minutes and the Secretary of State records to

the bank. A new CPA account was then opened with Sutton as the president. On the next day, May 16, 2013, Sutton returned to the bank and moved the remaining balance of $8,254 from the old CPA account to the new CPA account. The funds in the account were then used to generate cashier's checks for the payment of employees.

Veazey was out of town as these events unfolded. He received a phone call from a CPA customer that others were holding themselves out to be the representatives of CPA. Veazey returned to Atlanta that day and went immediately to the office. There, he found that all of the furniture, equipment, badges and files were gone. He reviewed the security tapes and discovered that the items were removed by Heidi Hintz and Arlin Kelly (another employee of CPA). Veazey then notified Wells Fargo to freeze the CPA bank account. He went to the bank on May 15, 2013 and removed all but $8,200. The next day, May 16, that $8,200 was of course moved by Sutton from the old CPA account to the new CPA account.

Litigation ensued. Veazey filed a complaint with the Atlanta Police Department. The police department investigated the complaint but took no disciplinary action against Sutton. Veazey also filed suit against Sutton, Heidi and Dean Hintz, Bryan, Wells Fargo, and others in the Superior Court of Fulton County. Veazey settled with Wells Fargo. He settled with Bryan "for an apology". The settlement agreement with Bryan reflects that Veazey agreed to dissolve CPA, which he did on November 19, 2013. Veazey also agreed to return to Bryan a 2005 Hummer which, according to Veazey, belonged to Bryan despite being titled to CPA. The suit went

to trial against Sutton and Heidi Hintz. The jury returned a verdict for $15,000 in compensatory damages, and no punitive damages, and judgment was entered on February 7, 2014.

Sutton filed this petition under Chapter 7 of the United States Bankruptcy Code on November 27, 2014. Veazey filed a complaint to determine the dischargeability of the $15,000 debt on February 11, 2015. The Court held a trial on this matter on April 14, 2016, and allowed the parties to submit post-trial briefs.

### *LEGAL CONCLUSION*

Veazey's complaint alleges the debt to be non-dischargeable under 11 U.S.C. § 523(a)(2).[1] The burden is on the creditor seeking the exception to discharge to prove non-dischargeability by a preponderance of the evidence. *See Grogan v. Garner*, 498 U.S. 279, 287–88, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); *see also Equitable Bank v. Miller (In re Miller)*, 39 F.3d 301, 304 (11th Cir.1994).

Section 523(a)(2)(A) excepts from discharge "any debt ... for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by ... false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." 11 U.S.C. § 523(a)(2)(A). The traditional elements of common law fraud apply to Section 523(a)(2)(A) claims. *Wells Fargo Bank, N.A. v. Farmery (In re Farmery)*, 2014 WL 2986630, at *1 (Bankr.N.D.Ga. Apr. 11, 2014) (*citing Field v. Mans*, 516 U.S. 59, 70 n. 9, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995)). Traditionally, to except a debt from discharge under Section 523(a)(2)(A)

1. The complaint does not state whether it relies on Subsection (A) or (B) of Section 523(a)(2), but it contains no allegations regarding use of a false financial statement, so the Court analyzes Veazey's claim under Section 523(a)(2)(A) only.

as a false representation, "a creditor must prove: (1) the debtor made a false representation to deceive the creditor, (2) the creditor relied on the misrepresentation, (3) the reliance was justified, and (4) the plaintiff sustained a loss as a result of the misrepresentation." *In re Farmery*, 2014 WL 2986630, at *1 (citations omitted).

A claim for actual fraud is broader than a claim for false representation. *FDS Nat'l Bank v. Alam (In re Alam)*, 314 B.R. 834, 840 (Bankr.N.D.Ga.2004). Actual fraud "consists of any deceit, artifice, trick, or design involving direct and active operation of the mind, used to circumvent or cheat another." *Id.* (citations omitted). The Supreme Court has confirmed that actual fraud does not require a misrepresentation. *Husky International Electronics, Inc. v. Ritz*, —— U.S. ——, 136 S.Ct. 1581, 1590, 194 L.Ed.2d 655 (2016).

Finally, Section 523(a)(2)(A) renders a debt non-dischargeable if it arose through false pretenses. False pretenses is defined as

[A] series of events, activities or communications which, when considered collectively, create a false and misleading set of circumstances, or false and misleading understanding of a transaction, in which a creditor is wrongfully induced by the debtor to transfer property or extend credit to the debtor. . . .A false pretense is usually, but not always, the product of multiple events, acts or representations undertaken by a debtor which purposely create a contrived and misleading understanding of a transaction that, in turn, wrongfully induces the creditor to extend credit to the debtor. A "false pretense" is established or fostered willfully, knowingly and by design; it is not the result of inadvertence.

*ColeMichael Invs., LLC v. Burke (In re Burke)*, 405 B.R. 626, 645 (Bankr.N.D.Ill. 2009) (alterations in original) (quoting *Sterna v. Paneras (In re Paneras)*, 195 B.R. 395, 406 (Bankr.N.D.Ill.1996)), aff'd 436 B.R. 53 (N.D.Ill.2010). "What constitutes 'false pretenses' in the context of § 523(a)(2)(A) has been defined as 'implied misrepresentations or conduct intended to create and foster a false impression.'" *Haeske v. Arlington (In re Arlington)*, 192 B.R. 494, 498 (Bankr.N.D.Ill.1996) (quoting *Banner Oil Co. v. Bryson (In re Bryson)*, 187 B.R. 939, 959 (Bankr.N.E.Ill. 1995)). "False pretenses do not necessarily require overt misrepresentations. Instead, omissions or a failure to disclose on the part of the debtor can constitute misrepresentations where the circumstances are such that omissions or failure to disclose create a false impression which is known by the debtor." *Id.*

In order to establish that a debt is non-dischargeable under § 523(a)(2)(A) as a debt for money, property, services, or credit obtained by false pretenses, a plaintiff must prove by a preponderance of the evidence that: "(1) the [defendant] made an omission or implied misrepresentation; (2) promoted knowingly and willingly by the defendant[ ]; (3) creating a contrived and misleading understanding of the transaction on the part of the plaintiff[ ]; (4) which wrongfully induced the plaintiff[ ] to advance money, property, or credit to the defendant.

*Adamar of N.J. v. August (In re August)*, 448 B.R. 331, 350 (Bankr.E.D.Pa.2011) (alterations in original) (internal quotes and cites omitted).

In this case, Veazey alleges that Sutton made false representations to or committed actual fraud or acted with false pretense with respect to Wells Fargo, result-

ing in the loss to Veazey of $8,254.[2] Veazey also argues that Sutton misrepresented himself as CPA's president, which resulted in CPA losing the money in the Wells Fargo account and losing contracts with its customers. Veazey also alleges he lost CPA's furniture, equipment and other personal property as a result of the scheme in which Sutton allegedly participated.

Putting aside the question of whether Veazey personally was injured or whether representations to a third party (as opposed to the creditor) are sufficient under Section 523(a)(2)(A), all theories of dischargeability under Section 523(a)(2)(A) require deception. Intent must exist at the time of the actual misrepresentation, false pretense, or actual fraud and must be actual, not implied, though gross recklessness may be sufficient. *Birmingham Trust Nat'l Bank v. Case*, 755 F.2d 1474, 1476 (11th Cir.1985). Courts should look to the totality of the circumstances to determine intent. *Chase Manhattan Bank N.A. v. Ford (In re Ford)*, 186 B.R. 312, 320 (Bankr.N.D.Ga.1995).

Veazey did not prove by a preponderance of the evidence that Sutton intended to deceive anyone, either expressly or impliedly. Sutton testified he understood and relied upon facts evidencing that Veazey had overstepped his bounds at CPA. The verbal information Sutton received from Bryan was corroborated by objective facts, such as Veazey's change of the Secretary of State records, particularly to include his 10–year–old son as Secretary, and Veazey's opening of a new bank account in December 2012. Veazey pre-

sented no evidence that Sutton knew the information he was provided was false or that the representations Sutton made to the bank or to customers were knowingly false. Moreover, no evidence was presented that Sutton in any way benefitted from the transaction, either actually or as proposed. No evidence was presented that Sutton retained any of the funds that were transferred. The only evidence was that the funds transferred were used to generate cashier's checks for employees. Veazey testified that Sutton was not the person who removed the furniture, fixtures and equipment from the office; that was Heidi Hintz and Arlin Kelly. Sutton may have been wrong in his understanding of the dispute between Veazey and Bryan,[3] but whether the theory is misrepresentation, false pretenses or actual fraud, Veazey has not shown that Sutton knew the information on which he relied was false, that he had any intention of deceiving Veazey, that he fostered a false pretense "willfully, knowingly and by design", or that he otherwise committed acts of fraud. Therefore, the Court concludes the debt Sutton owes to Veazey is not non-dischargeable under Section 523(a)(2)(A).

In Veazey's post-trial brief, he raises for the first time Section 523(a)(6) as a basis for the debt's non-dischargeability. Fed. R.Civ.P. 15(b)(2), which is incorporated into Fed. R. Bankr.P. 7015 provides, "When an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings. A party may move—at any time, even after judgment—to amend the pleadings to con-

---

**2.** Technically, the money was CPA's money, not Veazey's money. Nevertheless, a jury awarded Veazey $15,000 although it did not specify how it arrived at that number.

**3.** Veazey's state court complaint alleges, "On May 16, 2013, Andrew Bryan notified Plaintiff, Mark Veazey, Sr., stating that he had to teach him a lesson. Andrew Bryan notified Plaintiff that he was making new owners. ..."

form them to the evidence and to raise an unpleaded issue." Veazey has not moved to amend his pleadings so the Court will not consider the pleadings amended.

■■■ Even if a motion to amend were filed, the Court would need to determine if Veazey tried the Section 523(a)(6) theory of recovery through express or implied consent. The Court should evaluate whether the opposing party had a fair opportunity to defend against the new theory and whether he could have presented evidence had he known earlier the substance of the amendment. Moreover, even if evidence relevant to both theories of recovery is submitted, a post-trial amendment may be denied if the opposing party had no chance to consider a different trial strategy or offer additional evidence. *Morgan v. Kanak (In re Kanak)*, 85 B.R. 483 (Bankr.N.D.Ill.1988); *Diamond v. Vickery (In re Vickery)*, 488 B.R. 680 (10th Cir. BAP 2013). As with the *Vickery* case, Plaintiff's complaint never mentioned willful or malicious injury or Section 523(a)(6). Moreover, Plaintiff waived both opening and closing arguments so there was never any argument regarding Section 523(a)(6). Sutton had no indication Veazey intended to rely on Section 523(a)(6) until Veazey filed the post-trial brief. On these facts, a post-trial amendment would not be appropriate.

■■■ In any event, the evidence presented would not support a finding by this Court that Sutton willfully injured Veazey. As discussed above, Veazey did not show by a preponderance of the evidence that Sutton knew he was acting on inaccurate information. The term "willful" means in-tentional and deliberate; malicious means wrongful and without just cause or excessive even in the absence of personal hatred, spite or ill will. *Lee v. Ikner (In re Ikner)*, 883 F.2d 986, 990 (11th Cir.1989). The Supreme Court in *Kawaauhau v. Geiger*, 523 U.S. 57, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998), held that Section 523(a)(6) only encompasses acts done with the actual intent to cause injury. *Id.* at 61, 64, 118 S.Ct. 974. The word "willful" modifies injury such that non-dischargeability requires a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury. *Id.* Because the term "willful" means intentional and deliberate, willfulness cannot be established by reckless conduct. *Id.*

No evidence was presented that Sutton intentionally or deliberately or willfully harmed Veazey. While the acts he took were deliberate and intentional, for a debt to be non-dischargeable under Section 523(a)(6), the injury must be intentional or deliberate. Consequently, any effort by the Plaintiff to amend his complaint to include a theory of recovery under Section 523(a)(6) is fruitless and denied.

## CONCLUSION

For the reasons stated herein, the Court finds the debt owed by Sutton to Veazey to be dischargeable. Judgment will be entered for the Defendant.

**IT IS ORDERED.**