# United States Court of Appeals
## For the First Circuit

No. 17-1334

IN RE: STEVEN PALLADINO; LORI PALLADINO,

Debtors.

MARK G. DEGIACOMO, Chapter 7 Trustee for the Estate of
Steven Palladino and Lori Palladino, et al.,

Appellant,

v.

SACRED HEART UNIVERSITY, INC.,

Appellee.

APPEAL FROM THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Melvin S. Hoffman, U.S. Bankruptcy Judge]

Before

Howard, Chief Judge,
Torruella and Lynch, Circuit Judges.

Jeffrey R. Hellman, with whom the Law Offices of Jeffrey R.
Hellman was on brief, for appellant.
Martin P. Sheehan and Sheehan & Nugent PLLC on brief for the
National Association of Bankruptcy Trustees, amicus curiae.
Elizabeth J. Austin, with whom Jessica Grossarth and Pullman
& Comley LLC were on brief, for appellee.
Aaron S. Bayer, Benjamin M. Daniels, and Wiggin & Dana LLP on

brief for the American Council on Education, APPA, Association of American Medical Colleges, Association of Catholic Colleges and Universities, Association of Community College Trustees, Association of Governing Boards of Universities and Colleges, Association of Independent Colleges and Universities in Massachusetts, Association of Independent Colleges and Universities of Rhode Island, Association of Jesuit Colleges and Universities, Commission on Institutions of Higher Education of NEASC, Connecticut Conference of Independent Colleges, Council for Christian Colleges & Universities, Council of Independent Colleges, Higher Learning Commission, Middle States Commission on Higher Education, National Association of College and University Business Officers, National Association of Independent Colleges and Universities, Southern Association of Colleges and Schools Commission on Colleges, University Risk Management and Insurance Association, and WASC Senior College and University Commission, amici curiae.

November 12, 2019

**HOWARD, <u>Chief Judge</u>**.  Mark G. DeGiacomo, the Chapter 7 bankruptcy trustee for the bankruptcy estate of Steven and Lori Palladino ("the Palladinos") and Viking Financial Group, Inc., appeals from the bankruptcy court's grant of summary judgment in favor of appellee, Sacred Heart University.  The summary judgment order allowed the university to retain tuition payments made by the Palladinos for their adult child's college education, payments that were tendered while the Palladinos were legally insolvent.

In the fall of 2012, Nicole Palladino, the Palladinos' 18-year-old daughter, enrolled as an undergraduate at Sacred Heart University in Fairfield, Connecticut.[1]  Between March 2012, and March 2014, the Palladinos paid $64,656.22 in tuition to Sacred Heart.  In January 2014, however, the Palladinos also pled guilty in a state court to fraud in connection with operating a multimillion-dollar Ponzi scheme through their closely held company, Viking Financial Group, Inc. ("Viking").

Following their fraud convictions, Steven was sentenced to serve ten years in prison and Lori to five years' probation.  The Securities and Exchange Commission also obtained a $9.7 million civil judgment against the Palladinos for securities violations.

---

[1]     The age of majority -- that is, the age below which parents are expected to provide financial support for their children -- is a question of state law. <u>See</u> <u>Geltzer</u> v. <u>Oberlin Coll.</u> (<u>In Re Sterman</u>), 594 B.R. 229, 236 n.8 (Bankr. S.D.N.Y 2018). In both Massachusetts and Connecticut, that age is eighteen. <u>See</u> Mass. Gen. Laws ch. 4, § 7; Conn. Gen. Stat. Ann. § 1-1d.

In April 2014, the Palladinos filed a Chapter 7 bankruptcy petition. Viking filed its own Chapter 7 petition shortly thereafter. In May 2014, the bankruptcy court consolidated the two bankruptcy estates and appointed DeGiacomo to serve as the Chapter 7 trustee.

In July 2015, DeGiacomo filed a four-count adversary complaint against Sacred Heart in bankruptcy court seeking to avoid, and thus to claw back, the Palladinos' tuition payments to Sacred Heart. Two counts of the complaint claimed that the Palladinos' tuition payments constituted actual fraud under 11 U.S.C. § 548(a)(1)(A) and Mass. Gen. Laws ch. 109A, §§ 5(a)(1), 8, and 9.[2] The other two counts alleged that the Palladinos' payments were constructively fraudulent under 11 U.S.C. § 548(a)(1)(B) and Mass. Gen. Laws ch. 109A, §§ 5(a)(2), 8, and 9 because the Palladinos did not receive "reasonably equivalent value" in exchange for their tuition payments.

The concept underlying fraudulent transfer is easily grasped. Where a person cannot reasonably expect to pay his debts in due course, that person's transfer of his assets to another person, without receiving equivalent value in return, can if done

---

[2] Under 11 U.S.C. § 544(a), commonly referred to as the strong-arm clause, the bankruptcy trustee may exercise the rights of creditors under state fraudulent transfer or preferential transfer laws. Because DeGiacomo is a bankruptcy trustee, the strong-arm clause allows him to avoid transfers that violate 11 U.S.C. § 548(a)(1) or Mass. Gen. Laws ch. 109A, §§ 5(a) and 6(a).

- 3 -

with bad motive be viewed as a dishonest trick that ought to be civilly undone and perhaps criminally punished. The present case involved only the civil remedy, namely, the effort of the trustee to force the school to return the tuition payments.

The statutes or doctrine extending the remedy to "constructive fraud" contemplates the same remedy where the insolvent transferor does not have a bad motive. This is a reasonable result on its own terms since the concern is with equity among claimants and not criminal punishment. "Constructive" means that, as only a civil remedy is involved, the court will treat the situation as if it were fraud and require that the tuition or other transfer be undone and the money returned to the estate. 5 Collier on Bankruptcy ¶ 548.01 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2017) [hereinafter Collier].

In February 2016, DeGiacomo and Sacred Heart each moved for summary judgment. The bankruptcy court granted summary judgment in Sacred Heart's favor on all four counts of DeGiacomo's complaint. With respect to the constructive fraud claim -- the only issue on appeal -- the bankruptcy court found that the Palladinos paid their daughter's tuition because "they believed that a financially self-sufficient daughter offered them an economic benefit." DeGiacomo v. Sacred Heart Univ. (In Re Palladino), 556 B.R. 10, 16 (Bankr. D. Mass. 2016). This belief, the bankruptcy court reasoned, satisfied § 548(a)(1)(B)(i)'s

- 4 -

reasonably equivalent value standard.  The bankruptcy court then acted sua sponte to certify its decision for direct appeal to this court under 28 U.S.C. § 158(d)(2).  Because the bankruptcy court's ruling presents a question of law, our review is de novo.  Irving Tanning Co. v. Kaplan, 876 F.3d 384, 389 (1st Cir. 2017).

The law prohibiting fraudulent transfers protects creditors from transactions undertaken by the debtor prior to bankruptcy proceedings which deplete the pool of assets that will eventually be available to satisfy the creditors' claims.  Collier ¶ 548.01.  The origins date back to the Statute of 13 Elizabeth, which "made it fraudulent to hide assets from creditors by giving them to one's family, friends, or associates."  Husky Int'l Elecs., Inc. v. Ritz, 136 S. Ct. 1581, 1587 (2016).  Such a transfer operates to prioritize the friend or family member over bona fide creditors, which in turn "violates the principle, 'be just before you are generous.'"  Bos. Trading Grp., Inc. v. Burnazos, 835 F.2d 1504, 1508 (1st Cir. 1987) (Breyer, J.).

Section 548(a)(1)(B)(i) of the Bankruptcy Code provides that:

> The trustee may avoid any transfer . . . of an interest of the debtor . . . incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily . . . received less than a reasonably equivalent value in exchange for such transfer or obligation.

11 U.S.C. § 548(a)(1)(B)(i). The term "reasonably equivalent value" is not defined in the statute, but it does not include intangible, emotional, and non-economic benefits. See, e.g., Tavenner v. Smoot, 257 F.3d 401, 408-09 (4th Cir. 2001).

Because fraudulent transfer law's purpose is to preserve the debtor's estate for the benefit of unsecured creditors, courts evaluate transfers from the creditors' perspective, Riley v. Countrywide Home Loans, Inc. (In re Duplication Mgmt., Inc.), 501 B.R. 462, 483 (Bankr. D. Mass. 2013), measuring value at the time of the transfer, BFP v. Resolution Tr. Corp., 511 U.S. 531, 545-46 (1994); see also Cooper v. Ashley Commc'ns, Inc. (In re Morris Commc'ns NC, Inc.), 914 F.2d 458, 466 (4th Cir. 1990). Tuition payments made by insolvent parents have divided the courts,[3] although the recent cases have mostly ruled for trustees.

To us, the answer is straightforward. The tuition payments here depleted the estate and furnished nothing of direct value to the creditors who are the central concern of the code provisions at issue. The code recognizes five classes of

---

[3] Compare Sikirica v. Cohen (In re Cohen), 2012 Bankr. LEXIS 5097 (Bankr. W.D. Pa. 2012), and Shearer v. Oberdick (In re Oberdick), 490 B.R. 687, 711-12 (Bankr. W.D. Pa. 2013) (holding for parents and universities), with Roach v. Skidmore Coll. (In Re Dunston), 566 B.R. 624, 637 (Bankr. S.D. Ga. 2017), Boscarino v. Bd. of Trs. of Conn. State Univ. Sys. (In re Knight), 2017 Bankr. LEXIS 3324 (Bankr. D. Conn. 2017), and Geltzer, 594 B.R. 229 (holding in favor of trustees).

transactions that confer value: (1) the exchange of property; (2) the satisfaction of a present debt; (3) the satisfaction of an antecedent debt; (4) the securing or collateralizing of a present debt; and (5) the granting of security for the purpose of securing an antecedent debt.  11 U.S.C. § 548(d)(2)(A).  None are present here, nor are parents under any legal obligation to pay for college tuition for their adult children.[4]

Payments not for value by insolvent creditors could in many situations go to worthy causes or, for example, to elderly parents or needful siblings.  But such payments, absent one of the exceptions above, will be undone by the rules that allow bankruptcy trustees to claw back transfers.  Congress enacted the fraudulent and constructively fraudulent claw back laws.  The members of Congress were elected by the public and when they have made the trade-offs which are set forth in the statute, courts must enforce those statutes.  Absent constitutional challenge, when confronted with a clear statutory command like the one in the bankruptcy code,

---

[4] One might argue for a different outcome in the case of a minor child if, for example, state law required the expenditure. Cf. Geltzer v. Xaverian High Sch. (In re Akanmu), 502 B.R. 124 (Bankr. E.D.N.Y. 2013).  Here, however, no legal obligation exists in Massachusetts for parents to support adult children at all. Sacred Heart invokes a "societal expectation" that parents will pay college tuition for their adult children, but, and again, this does nothing for the creditors.

that is the end of the matter.  See <u>TVA</u> v. <u>Hill</u>, 437 U.S. 153, 194 (1978).[5]

The judgment of the bankruptcy court is **reversed** and the case **remanded** for further proceedings consistent with this decision.  It is so ordered.

---

[5] Because we find that DeGiacomo is entitled to avoid the tuition payments under § 548(a)(1)(B)(i), we do not reach his argument under Mass. Gen. Laws ch. 109A, § 5(a)(2).