NOT FOR PUBLICATION

**FILED**



MAR 3 2021

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>PAUL WILLIAM MARTIN,<br>          Debtor. | BAP No. CC-19-1336-LGF<br><br>Bk. No. 2:17-bk-16996-ER |
| PAUL WILLIAM MARTIN,<br>          Appellant,<br>v.<br>KEVIN HUNTER,<br>          Appellee. | Adv. No. 2:17-ap-01587-ER<br><br>**MEMORANDUM**<sup>*</sup> |

Appeal from the United States Bankruptcy Court
for the Central District of California
Ernest M. Robles, Bankruptcy Judge, Presiding

Before: LAFFERTY, GAN, and FARIS, Bankruptcy Judges.

## INTRODUCTION

Debtor Paul Martin appeals the bankruptcy court's judgment after trial finding $10,000 of his debt to Kevin Hunter nondischargeable under

---

       * This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

§ 523(a)(2)(A)[1] and awarding $25,495.68 in attorney's fees and costs to Mr. Hunter pursuant to the terms of the underlying promissory note.

We AFFIRM.

## FACTS

In 2010, Mr. Hunter loaned $50,000 to Mr. Martin to assist Mr. Martin in developing his startup company, Veronica Rose Productions, Inc. ("VRP"). At the time, Mr. Hunter was a managing director and portfolio manager of an investment management firm. He met Mr. Martin through a mutual acquaintance, attorney George Shohet. Mr. Shohet initially approached Mr. Hunter about making an equity investment in VRP, but Mr. Hunter declined because he did not have time to perform due diligence. But based on Mr. Shohet's representations, Mr. Hunter eventually agreed to a short-term loan to Mr. Martin that would be secured by two paintings and a Porsche automobile. Mr. Martin prepared proposed terms sheets stating that the combined value of this collateral exceeded $50,000.

Mr. Shohet drafted a "Secured Promissory Note" (the "Note"), which the parties executed. The Note was dated September 1, 2010, in the principal amount of $50,000 with interest at six percent. All principal and unpaid interest was due September 1, 2011. The Note stated that it was secured by a 1996 Porsche 993 and two untitled, signed, original Chris

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532.

Reilly paintings owned by Mr. Martin, and that upon default, Mr. Hunter would have the right to sell the collateral. The Note also provided for recovery of attorney's fees incurred in connection with the enforcement or collection of the Note, as well as costs and expenses incurred in connection with any actions for "the protection or preservation of any rights of the holder hereunder."

Mr. Hunter never perfected his security interest in the collateral. Mr. Martin never made any payments on the Note. In 2015, Mr. Martin sold the Porsche to a mechanic for $10,000 because the car needed major repairs he could not afford. He did not inform Mr. Hunter of the sale or remit any of the proceeds to Mr. Hunter.[2] Mr. Hunter sued Mr. Martin in state court; in June 2017, shortly before that court was about to rule on Mr. Hunter's motion for summary judgment, Mr. Martin filed the instant chapter 7 case.

Mr. Hunter timely filed an adversary proceeding seeking to except from discharge Mr. Martin's debt to him pursuant to §§ 523(a)(2)(A) and (B), (a)(4), and (a)(6). After a two-day trial, the bankruptcy court issued its Memorandum of Decision ruling on Mr. Hunter's causes of action under §§ 523(a)(2), (a)(4), and (a)(6).

---

[2] Mr. Martin testified at trial that the paintings had become essentially worthless due to decay caused by exposure to the salt and air in his seaside apartment. Because Mr. Hunter did not present any evidence as to what the paintings were worth in August 2010 when the loan was made, the bankruptcy court found that he had not carried his burden of showing that Mr. Martin's claimed valuation was materially false when made. No party has appealed that issue.

3

With respect to the § 523(a)(2)(A) cause of action, the bankruptcy court found that although Mr. Hunter had not established a claim based on any false representation by Mr. Martin at the inception of the transaction, Mr. Hunter did establish that Mr. Martin was liable under an "actual fraud" theory pursuant to *Husky International Electronics, Inc. v. Ritz*, 136 S. Ct. 1581 (2016), because Mr. Martin sold the Porsche knowing that it was collateral for the loan from Mr. Hunter and without informing Mr. Hunter or remitting any of the proceeds to him. The court thus found that the $10,000 paid to Mr. Martin and not turned over to Mr. Hunter was nondischargeable. The court rejected all of Mr. Hunter's other claims.

The bankruptcy court also found that Mr. Hunter was entitled to prevailing party attorney's fees under California Code of Civil Procedure § 1021 and the terms of the promissory note, but only for those fees incurred establishing Mr. Martin's liability for actual fraud. The court found that Mr. Hunter was entitled to reimbursement of fees of $24,005.98 and $1,489.70 in costs.

The bankruptcy court entered judgment declaring nondischargeable $10,000 of Mr. Martin's debt to Mr. Hunter and awarding Mr. Hunter $25,495.68 in attorney's fees and costs. Mr. Martin timely appealed.

**JURISDICTION**

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(I). We have jurisdiction under 28 U.S.C. § 158.

4

**ISSUES**

Did the bankruptcy court err in finding $10,000 of the debt owed to Mr. Hunter nondischargeable on an actual fraud theory?

Did the bankruptcy court abuse its discretion in awarding attorney's fees to Mr. Hunter?

**STANDARDS OF REVIEW**

"We review the bankruptcy court's conclusions of law de novo and its factual findings for clear error. Whether a claim is nondischargeable presents mixed issues of law and fact and is reviewed de novo." *Carillo v. Su (In re Su)*, 290 F.3d 1140, 1142 (9th Cir. 2002) (citations omitted). Intent to defraud in the context of a dischargeability proceeding is a question of fact. *Deitz. v. Ford (In re Deitz)*, 469 B.R. 11, 24–25 (9th Cir. BAP 2012), *aff'd*, 760 F.3d 1038 (9th Cir. 2014).

We review the bankruptcy court's award of attorney's fees for an abuse of discretion. *Bartenwerfer v. Buckley (In re Bartenwerfer)*, 613 B.R. 730, 735 (9th Cir. BAP 2020). A bankruptcy court abuses its discretion if it applies an incorrect legal standard, misapplies the correct legal standard or makes factual findings that are illogical, implausible, or not supported by the record. *United States v. Hinkson*, 585 F.3d 1247, 1261–62 (9th Cir. 2009) (en banc).

"We may affirm on any basis supported by the record." *Caviata Attached Homes, LLC v. U.S. Bank, Nat'l Ass'n (In re Caviata Attached Homes, LLC)*, 481 B.R. 34, 44 (9th Cir. BAP 2012) (citation omitted).

## DISCUSSION

**A. The bankruptcy court did not err in entering judgment against Mr. Martin on the § 523(a)(2)(A) claim for actual fraud.**

Section 523(a)(2)(A) excepts from discharge debts "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . false pretenses, a false representation, or **actual fraud**, other than a statement respecting the debtor's or an insider's financial condition[.]" (Emphasis added). The Supreme Court has recently held that "actual fraud" is not limited to fraudulent misrepresentations but may include other fraudulent conduct, such as fraudulent conveyance schemes. *Husky Int'l Elecs., Inc.*, 136 S. Ct. at 1586.

In *Husky*, the debtor, Ritz, was a director and part owner of Chrysalis Manufacturing Corporation ("Chrysalis"). After Chrysalis became indebted to Husky, Ritz drained Chrysalis of assets by transferring funds to other entities he controlled. After Ritz filed a chapter 7 bankruptcy, Husky filed an adversary proceeding seeking to hold Ritz personally liable for Chrysalis' debt and for a declaration that the debt was nondischargeable under § 523(a)(2)(A) on an actual fraud theory. The Supreme Court reversed the Fifth Circuit Court of Appeals' holding that the fraud at issue did not fall under the rubric of § 523(a)(2)(A) because it did not involve a fraudulent misrepresentation.

The Court reasoned:

> This Court has historically construed the terms in § 523(a)(2)(A) to contain the elements that the common law has defined them to include. "Actual fraud" has two parts: actual and fraud. The word "actual" has a simple meaning in the context of common-law fraud: It denotes any fraud that involves moral turpitude or intentional wrong. "Actual" fraud stands in contrast to "implied" fraud or fraud "in law," which describe acts of deception that may exist without the imputation of bad faith or immorality. Thus, anything that counts as "fraud" and is done with wrongful intent is "actual fraud."

*Id.* (citations, quotations, and alterations omitted).

The Court observed that in the fraudulent conveyance context, "the fraudulent conduct is not in dishonestly inducing a creditor to extend a debt. It is in the acts of concealment and hindrance." *Id.* at 1587.

As noted, the bankruptcy court found that Mr. Martin sold the Porsche knowing that it was collateral for the Note without informing Mr. Hunter or remitting any proceeds of the sale to Mr. Hunter, and he knew the unauthorized sale was wrong.[3] The bankruptcy court did not err in inferring the requisite fraudulent intent (i.e., concealment and hindrance) from these facts.[4]

---

[3] At trial, after Mr. Martin testified that he had sold the car, the court asked him to confirm that he did not give any of the $10,000 to Mr. Hunter. Mr. Martin replied, "[N]o, I didn't. . . [T]he car hadn't come up in any conversations and I didn't contact him and that was my fault . . . ." Trial Tr. (Feb. 4, 2019) at 205:12-17.

[4] Mr. Martin's conduct does not fit precisely into the typical fraudulent conveyance scenario, where a debtor transfers assets to put them out of the reach of **unsecured** creditors. And the bankruptcy court did not make an explicit finding that Mr. Martin sold the Porsche with the intent to hinder, delay or defraud Mr. Hunter. But

On appeal, Mr. Martin points to no evidence in the record that would render illogical or implausible or fail to support the bankruptcy court's finding that Mr. Martin acted with the requisite intent in selling the Porsche. Instead, he argues that the bankruptcy court's intent finding is inconsistent with its intent finding on the § 523(a)(6) claim. There, the court found that Mr. Hunter had failed to establish that Mr. Martin acted willfully and maliciously in selling the Porsche:

> Martin's decision to sell the Porsche and retain the proceeds, all without telling Hunter, was wrongful, but does not qualify as a deliberate and intentional injury. Martin did not sell the Porsche for the purpose of injuring Hunter; he sold the Porsche because he could no longer afford the expensive engine repairs the car required.

Mr. Martin's argument assumes that the intent elements under §§ 523(a)(2)(A) and (a)(6) are identical, but they are not. To prevail on a § 523(a)(6) claim, the plaintiff must establish that the debt at issue is "for willful and malicious injury by the debtor to another entity or to the

these distinctions do not affect our conclusion that the bankruptcy court did not clearly err in its intent finding. *Husky* does not mandate that the conduct at issue constitute a fraudulent conveyance under state law to be actual fraud; rather, a fraudulent conveyance is simply an **example** of the type of conduct that could fall under § 523(a)(2)(A). *See Husky Int'l Elecs., Inc.*, 136 S. Ct. at 1586 ("The term 'actual fraud' in § 523(a)(2)(A) encompasses forms of fraud, like fraudulent conveyance schemes, that can be effected without a false representation."). Under *Husky*'s relatively broad standard (anything that counts as fraud and is done with wrongful intent), the requisite intent may be inferred from the findings that Mr. Martin knew the Porsche was Mr. Hunter's collateral, concealed the sale and the proceeds from Mr. Martin, and knew the sale was wrong.

property of another entity." The willful and malicious prongs of the claim must both be established. *Barboza v. New Form, Inc. (In re Barboza)*, 545 F.3d 702, 706 (9th Cir. 2008). A "willful" injury is a "deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." *Id.* (quoting *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998)). The willful injury requirement is met "only when the debtor has a subjective motive to inflict injury or when the debtor believes that injury is substantially certain to result from his own conduct." *Ormsby v. First Am. Title Co. of Nev. (In re Ormsby)*, 591 F.3d 1199, 1206 (9th Cir. 2010) (quoting *In re Su*, 290 F.3d at 1142). The debtor is "charged with the knowledge of the natural consequences of his actions." *Id.* (citing *Cablevision Sys. Corp. v. Cohen (In re Cohen)*, 121 B.R. 267, 271 (Bankr. E.D.N.Y. 1990)). And a malicious injury involves (1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse. *Petralia v. Jercich (In re Jercich)*, 238 F.3d 1202, 1208 (9th Cir. 2001).

Although fraud and willful and malicious conduct both require tortious intent, § 523(a)(6) requires a more culpable state of mind, i.e., malice. *See Plyam v. Precision Dev., LLC (In re Plyam)*, 530 B.R. 456, 464 (9th Cir. BAP 2015) (noting that the Supreme Court's holding in *Geiger*—that the requisite state of mind is intent to injure or substantial certainty regarding injury—narrowly construed § 523(a)(6) to require "the most blameworthy state of mind included within the common understanding of malice in fact."). After hearing testimony and assessing credibility, the bankruptcy

9

court found that this standard was not met, but given the differences in the applicable standards, that finding does not contradict the court's intent finding with respect to the § 523(a)(2)(A) claim.

**B.    The bankruptcy court did not abuse its discretion in awarding attorney's fees to Mr. Hunter.**

Although there is no general right to attorney's fees under the Bankruptcy Code, a prevailing party may be entitled to attorney's fees under applicable state law if that law governs the substantive issues raised in the proceedings. *Heritage Ford v. Baroff (In re Baroff)*, 105 F.3d 439, 441 (9th Cir. 1997). The bankruptcy court found that California Code of Civil Procedure § 1021 provided the legal basis for the fee award because that statute is not limited to contract claims but may also include tort claims.[5] *Taburaza v. Zarate (In re Zarate)*, 567 B.R. 176, 182 (Bankr. N.D. Cal. 2017). To determine whether fees are recoverable under this provision, "a court must look to the language of the agreement." *Terra Nova Indus., Inc. v. Chen (In re Chen)*, 345 B.R. 197, 201 (N.D. Cal. 2006) (citing *3250 Wilshire Blvd. Bldg. v. W.R. Grace & Co.*, 990 F.2d 487, 489 (9th Cir. 1993)).

Mr. Martin does not contend that the bankruptcy court applied the wrong law. He does, however, contend that the court erred in its interpretation of the attorney's fee clause of the Note, which provides:

---

[5] That statute provides: "Except as attorney's fees are specifically provided for by statute, the measure and mode of compensation of attorneys and counselors at law is left to the agreement, express or implied, of the parties; but parties to actions or proceedings are entitled to their costs, as hereinafter provided."

10

> Borrower shall pay all costs and expenses, including, without limitation, reasonable attorneys' fees and expenses Lender expends or incurs in connection with the enforcement of this Note, the collection of any sums due hereunder, any actions for declaratory relief in any way related to this Note, or the protection or preservation of any rights of the holder hereunder.

The bankruptcy court found that this language was broad enough to encompass the matter before it, citing case law involving similar broad language. *E.g.*, *3250 Wilshire Blvd. Bldg.*, 990 F.2d at 489 (contract providing for fees for any suit with respect to "the subject matter or enforcement" of contract covered tort claims); *Santisas v. Goodin*, 17 Cal. 4th 599, 608 (1998) (agreement for fees for any litigation "arising out of the execution" of agreement or sale of property covered tort claims); *Xuereb v. Marcus & Millichap, Inc.*, 3 Cal. App. 4th 1338, 1341 (1992) (agreement providing for prevailing party fees in "a lawsuit or other legal proceeding" to which it gives rise covered tort claims, including events that occurred prior to agreement's formation).

Specifically, the court found that the provision for the recovery of fees incurred in connection with "the protection or preservation of any rights of the holder hereunder" was broad enough to encompass the dischargeability action, although such fees would be limited to amounts incurred in connection with establishing the actual fraud claim.

11

Mr. Martin's sole argument on appeal with respect to attorney's fees is that the bankruptcy court misconstrued the language of the Note. He contends that the word "hereunder" referred to the contract and could not be read to include tort theories or any other theory than a breach of contract. Mr. Martin does not elaborate further, and he has not carried his burden to show that the bankruptcy court's interpretation was incorrect. Certainly, the "protection and preservation of **any** rights of the holder" would necessarily encompass virtually all claims that could be made in connection with the Note. Nothing else in the applicable language suggests it is limited to breach of contract actions. And the contracts at issue in the authorities cited above are certainly analogous enough to support the bankruptcy court's conclusion that the Note authorized the award of attorney's fees in this action. In short, Mr. Martin has not met his burden to show that the bankruptcy court erred in its interpretation of the Note.

## CONCLUSION

For these reasons, we AFFIRM.