BAP Appeal No. 23-12    Docket No. 83    Filed: 07/11/2024    Page

**FILED**

U.S. Bankruptcy Appellate
Panel of the Tenth Circuit

**July 11, 2024**

**Anne M. Zoltani**

**Clerk**

PUBLISH

# UNITED STATES BANKRUPTCY APPELLATE PANEL
# OF THE TENTH CIRCUIT

_____

IN RE RESON LEE WOODS and SHAUN WOODS,

Debtors.

_____

GRANGE INSURANCE ASSOCIATION,

Plaintiff - Appellee,

v.

RESON LEE WOODS and SHAUN WOODS,

Defendants - Appellants.

BAP No. CO-23-012

Bankr. No. 21-15592
Adv. No. 22-01108
Chapter 7

OPINION

_____

Appeal from the United States Bankruptcy Court
for the District of Colorado

_____

Drew Moore of Grand Junction, Colorado for Defendant – Appellants.

Martin E. Long of Long & Long P.C., Denver, Colorado for Plaintiff – Appellee.

_____

Before **JACOBVITZ**, **LOYD**, and **THURMAN**, Bankruptcy Judges.

_____

**JACOBVITZ**, Bankruptcy Judge.

Mistakes happen, but mistakes, by definition, are not the result of clearly planned efforts. Appellant-Debtors, Shaun and Reson Lee ("Lee") Woods, contend that Shaun

Woods mistakenly submitted a receipt for a riding lawn mower and a bill of sale for a diamond ring in support of replacement cash value insurance claims for the mower and ring lost in a fire. These replacement cash value claims initiated Appellee Grange Insurance Company's ("Grange") insurance fraud claim in a Colorado state district court. On summary judgment, the state court found Lee and Shaun Woods committed insurance fraud by submitting claims for payment for loss of the mower and ring based on fabricated documentation and concluded that the fraud voided the insurance contract entitling Grange to recover all the funds it paid under their insurance policy. The state court entered a summary judgment against Lee and Shaun Woods in the amount of $582,122.79. The Colorado Court of Appeals affirmed.

Armed with these decisions, the Bankruptcy Court determined the state court rulings precluded further litigation of the fraud issue in the nondischargeability adversary proceeding and granted Grange's motion for summary judgment under § 523(a)(2)(A)[1] on the theory of actual fraud, which it determined does not require proof of justifiable reliance. In the alternative, the Bankruptcy Court determined that Grange justifiably relied on the fabricated documentation.

But that is not the entire story. Grange paid at most $1,186.58 on the replacement cash value claim for the mower, and it made no payment on the claim for the ring. The Debtors, having obtained at most $1,186.58 by fraud, both ended up with a $582,122.79 nondischargeable judgment. The Debtors appealed.

---

[1] Unless other specified, references to "section" and "§" are to sections of title 11 of the United States Code.

We agree that the Bankruptcy Court properly determined that Shaun Woods made false representations with intent to deceive based on the issue-preclusive effect of the state court judgment. But the Bankruptcy Court erred when it ruled that Grange was not required to prove justifiable reliance under § 523(a)(2)(A) on a theory of actual fraud and, in the alternative, determined that there was no genuine dispute of material fact with respect to proof of justifiable reliance under § 523(a)(2)(A). There is also a genuine dispute of material fact regarding whether Grange suffered a loss because of the false representations, precluding summary judgment.

Accordingly, we REVERSE and REMAND to the Bankruptcy Court for further proceedings consistent with this opinion.

## I. Background

### A. The Insurance Dispute

The Debtors owned a farm near Ignacio, Colorado and bought an insurance policy (the "Policy") from Grange in 2016. The Policy included coverage on the farm, the residence on the farm, and the Debtors' personal property. In 2017, the farmhouse, where the Debtors resided, burned down.

The Debtors then submitted insurance claims to Grange related to the farmhouse, use of the farmhouse, and personal property damaged in the fire. A dispute arose as to the value of the farmhouse. The parties attempted to settle the dispute, but the bank holding a mortgage against the property would not agree to the settlement and negotiations ended. Grange then, in accordance with the Policy, initiated a declaratory judgment action before

a Colorado state court (the "State District Court") to obtain a judicial valuation of the farmhouse (the "State Court Litigation").

The Debtors answered the complaint and asserted counterclaims for, among other things, breach of contract, bad faith, and violation of the Colorado Consumer Protection Act. The State District Court valued the farmhouse at $354,660.11. Grange tendered a check in that amount to the Debtors. Grange paid the Debtors additional amounts on their claims for loss of use of the farmhouse and damage to personal property. That included payment of claims for the actual cash value of damaged personal property, which did not require submission of documentation in support of the claims.

Despite continuing to dispute the amount Grange owed for damage to the farmhouse, the Debtors cashed the check for the court-determined value. The Debtors then had their counsel reach out to Grange to see what other claims Grange would consider for reimbursement. Grange's counsel responded by email that Grange would "entertain any submissions made pursuant to the terms of the policy."[2] Following this email, the Debtors submitted replacement cash value claims with supporting documentation for various items of personal property under the contents provision of the Policy, seeking the difference between the replacement cash value and the actual cash value Grange had already paid. Unlike actual cash value claims, the Policy required that replacement cash value claims be supported by appropriate documentation.

---

[2] November 20, 2018 email from Stuart Morse, *in* Appellants' App. at 114.

4

The Debtors' replacement cash value claims included claims for a Kubota Mower Z-122 R-42 riding lawn mower (the "Mower") and a diamond ring (the "Ring"). The documentation Shaun Woods submitted to Grange in support of these replacement cash value claims included a purported receipt and a purported bill of sale showing that the Debtors purchased the Mower from Jose Sergio Verboonen for $3,825 and purchased the Ring from Italian Design Jewelers for $2,900.

The day after the Debtors submitted the claims, Grange sent a letter and check for $2,817.48 representing the difference between the replacement cash value and the previously paid actual cash value for the replacement cash value claims it decided to pay. Grange attached to the letter various documents Shaun Woods had submitted with follow-up requests noted for the claims it would not pay without further documentation. The claim for the Ring was among the claims Grange would not pay without further documentation. The $2,817.48 check included $1,186.58 in payment of the replacement cash value claim for the Mower. The same day Grange sent the letter and check to the Debtors, it also served them with its first set of discovery requests relating to the claim for the Mower. Following this set of discovery requests, the Debtors' counsel emailed Grange's counsel offering to return the $2,817.48 check to Grange or to destroy it. The Debtors then filed a response to the first set of discovery requests contending Shaun Woods mistakenly included the Mower receipt in support of the claims.

Grange then served the Debtors with a second set of discovery requests. Through those requests, Grange obtained an admission that the Debtors did not purchase the Mower from Jose Sergio Verboonen for $3,825. In defense, Shaun Woods stated: "I

5

made a clerical error in creating an invoice for reimbursement for the Kubota Mower by including Jose Sergio Verboonen as the seller."[3] In fact, Dr. Verboonen was a medical doctor who performed gastric sleeve surgery on Shaun Woods in Tijuana, Mexico at a cost of $3,825. Similarly, in the same discovery response, Shaun Woods admitted that she did not purchase the Ring from Italian Design Jewelers for $2,900. Shaun Woods maintained that she "mistakenly" submitted the claims for the Mower and the Ring. Lee Woods continued to assert he had no knowledge of or involvement in these acts.

Following these admissions, Grange amended its state court complaint to include insurance fraud and breach of contract claims related to the false replacement cash value claims for the Mower and the Ring. Grange also filed a motion for summary judgment contending the Debtors submitted false and misleading information in support of their insurance claims. On August 2, 2019, the State District Court granted Grange's motion for summary judgment determining "[t]he facts establish that [the Debtors] engaged in fraud in presenting the claimed losses for payment."[4]

The State District Court further determined the fraudulent conduct triggered the fraud provision in the Policy, voiding the insurance contract and entitling Grange to recover all benefits it had paid to the Debtors under the Policy as permitted under Colorado law. The State District Court entered a summary judgment against the Debtors (the "State Court Judgment") for $579,339.15 plus costs of $2,783.64, for a total of

---

[3] *Response to Petitioner's Second Set of Written Discovery to Respondents* at 2, *in* Appellants' App. at 188.

[4] State Court Judgment, *in* Appellants' App. at 195.

$582,122.79 (the "Judgment Debt"). The State District Court also denied the Debtors'

counterclaims. Subsequently, the Debtors appealed, and after de novo review, the

Colorado Court of Appeals affirmed the State Court Judgment. The Debtors then filed a

petition for writ of certiorari to the Colorado Supreme Court, which denied the petition.

The State District Court summary judgment is a final judgment.

### B. *The Bankruptcy*

On November 8, 2021, the Debtors commenced their voluntary chapter 7 case.

Grange then filed a proof of claim and an adversary proceeding seeking to have the

Judgment Debt declared nondischargeable under § 523(a)(2)(A) and (a)(6). Grange filed

a motion for summary judgment (the "MSJ") in the adversary proceeding, asserting the

State Court Judgment should be given preclusive effect to establish the necessary

elements for nondischargeability under § 523(a)(2)(A) on an actual fraud theory. The

Bankruptcy Court agreed and determined that the entire Judgment Debt was

nondischargeable as to both Debtors under § 523(a)(2)(A). The Bankruptcy Court did not

address the § 523(a)(6) claim. The Debtors appealed.

### II. Jurisdiction

The Tenth Circuit Bankruptcy Appellate Panel has jurisdiction to hear timely filed

appeals from "final judgments, orders, and decrees" of bankruptcy courts within the

Tenth Circuit, unless a party timely elects to have the district court hear the appeal.[5] The

Debtors timely filed an appeal of the Bankruptcy Court's *Order Granting Motion for*

---

[5] 28 U.S.C. § 158(a)(1), (b)(1), and (c)(1); Fed. R. Bankr. P. 8003, 8005.

*Summary Judgment*. Because the order did not appear to be a final order, on May 16, 2023, this Court entered its *Order Regarding Rule 54(b) Certification* requiring the Debtors to secure a Rule 54(b) certification or an order explicitly adjudicating all claims from the Bankruptcy Court.[6] On May 22, 2023, the Bankruptcy Court entered an order making a Rule 54(b) certification that there was no just reason for delay.[7] Following the Bankruptcy Court's Rule 54(b) certification, on May 24, 2023, this Court entered its *Order Allowing Appeal to Proceed* concluding the *Order Granting Motion for Summary Judgment* was a final appealable order.[8] No party has elected to have the district court hear the appeal. Accordingly, this Court has jurisdiction to hear and decide this appeal.

### III. Statement of Issues, the Standard of Review, and Summary Judgment Standards

#### A. The Issues on Appeal

There are four issues on appeal from the Bankruptcy Court's *Order Granting Motion for Summary Judgment*. First, whether the Bankruptcy Court erred by granting summary judgment in favor of Grange on the § 523(a)(2)(A) nondischargeability claim by giving preclusive effect to the State Court Judgment to establish the Debtors obtained the Judgment Debt by actual fraud. Second, whether the Bankruptcy Court erred by determining, in the alternative, that there was no genuine dispute of material fact with respect to proof of justifiable reliance under § 523(a)(2)(A). Third, whether the Bankruptcy Court erred by determining the entire Judgment Debt was nondischargeable.

---

[6] *Order Regarding Rule 54(b) Certification*, *in* Appellants' App. at 4128.
[7] *Judgment Pursuant to Fed. R. Civ. P. 54(b)*, *in* Appellants' App. at 4131.
[8] *Order Allowing Appeal to Proceed*, *in* Appellants' App. at 4133.

And fourth, whether the Bankruptcy Court erred by determining the entire Judgment Debt was nondischargeable as to Lee Woods who claims he is an innocent spouse.

### B. The Standard of Review

We review the Bankruptcy Court's grant of summary judgment de novo.[9] "De novo review requires an independent determination of the issues, giving no special weight to the bankruptcy court's decision."[10] Accordingly, we give no deference to the Bankruptcy Court's decision but apply the same standard as the Bankruptcy Court.[11]

### C. The Summary Judgment Standard

Summary judgment will be granted when, taking the evidence in the light most favorable to the non-moving party, the moving party shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.[12] The moving party bears the initial burden to show the absence of a genuine dispute

---

[9] *Harris v. Beneficial Okla., Inc. (In re Harris)*, 209 B.R. 990, 993 (10th Cir. BAP 1997) ("The grant or denial of summary judgment is reviewed *de novo*."); *see also Dodge v. Cotter Corp.*, 203 F.3d 1190, 1197 (10th Cir. 2000) (reviewing the trial court's "entry of summary judgment barring claims under the doctrine of collateral estoppel de novo, construing the record in the light most favorable to the non-moving party and drawing all inferences in that party's favor"); *Missouri v. Audley (In re Audley)*, 275 B.R. 383, 386 (10th Cir. BAP 2002) (reviewing the bankruptcy court's decision to give collateral estoppel effect on summary judgment de novo).

[10] *In re Liehr*, 439 B.R. 179, 182 (10th Cir. BAP 2010) (citing *Salve Regina Coll. v. Russell*, 499 U.S. 225, 238 (1991)).

[11] *Carlile v. Reliance Standard Life Ins. Co.*, 988 F.3d 1217, 1221 (10th Cir. 2021).

[12] Fed. R. Civ. P. 56(a) made applicable by Fed. R. Bankr. P. 7056.

as to any material fact and that it is entitled to judgment as a matter of law,[13] even if the nonmovant fails to respond to the motion.[14]

As part of its initial burden, the moving party must identify the material facts with respect to which it asserts no genuine dispute exists, properly supported by evidence, admissions, and other materials in the record.[15] Although the court must review the materials submitted by the parties in support of or in opposition to summary judgment that are adequately brought to its attention, the court may but is not required to consider other materials in the record.[16]

If the moving party fails to properly support a material fact it asserts is not in genuine dispute or a nonmoving party fails to address the movant's assertion of a fact, as required by Rule 56(c), the court may:

> (1) give [the movant] an opportunity to properly support or [a nonmovant an opportunity to properly support or] address the fact;
> (2) consider the fact undisputed for purposes of the motion;
> (3) grant summary judgment if the motion and supporting materials— including the facts considered undisputed—show that the movant is entitled to it; or

---

[13] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (The "party seeking summary judgment always bears the initial responsibility of informing the . . . court of the basis for its motion, and . . . demonstrat[ing] the absence of a genuine issue of material fact."); *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991) ("The moving party has the initial burden to show 'that there is an absence of evidence to support the nonmoving party's case.'") (quoting *Celotex Corp.*, 477 U.S. at 325)).

[14] Fed. R. Civ. P. 56(a); *Perez v. El Tequila, LLC*, 847 F.3d 1247, 1254 (10th Cir. 2017).

[15] Fed. R. Civ. P. 56(c)(1).

[16] *See Lazy S Ranch Props., LLC v. Valero Terminaling & Distrib. Co.*, 92 F. 4th 1189, 1198 (10th Cir. 2024) (the court need only review the materials adequately brought to its attention); *Torry v. City of Chicago*, 932 F. 3d 579, 584 (7th Cir. 2019) (citing Fed. R. Civ. P. 56(c)(3)); *Spencer v. Abbott*, 731 F. App'x 731, 738 (10th Cir. 2017) (same).

(4) issue any other appropriate order."[17]

When determining whether summary judgment should be granted, the Court must "examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment."[18] Under this standard, summary judgment is appropriate "if the evidence points only one way and no reasonable inferences could support the non-moving party's position."[19] In other words, no genuine dispute of material fact exists if "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party."[20]

## IV.    Analysis

Determining whether a debt is nondischargeable is a two-step process.[21] First, the creditor must establish a debt is owed by the debtor to the creditor under applicable nonbankruptcy law.[22] If that showing is made, the creditor must then show that the debt is excepted from the discharge.[23]

---

[17] Fed. R. Civ. P. 56(e) made applicable by Fed. R. Bankr. P. 7056.

[18] *Wolf v. Prudential Ins. Co. of Am.*, 50 F.3d 793, 796 (10th Cir. 1995) (quoting *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990)); *see also Genberg v. Porter*, 882 F.3d 1249, 1253 (10th Cir. 2018) (same).

[19] *Genberg*, 882 F.3d at 1253.

[20] *Matsushita Elec. Indus. Co., Ltd., v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[21] *Glencove Holdings, LLC v. Bloom (In re Bloom)*, 634 B.R. 559, 579 (10th Cir. BAP 2021), *aff'd*, No. 22-1005, 2022 WL 2679049 (10th Cir. July 12, 2022).

[22] *Id.*

[23] *Id.; accord Smithyman v. Crawford (In re Crawford)*, No. 22-52999-WLH, 2023 WL 6307067, at *7 (Bankr. N.D. Ga. Sept. 27, 2023); *Amex Elec. Servs. Dallas–Fort Worth, Inc. v. Molinar (In re Molinar)*, No. 21-31109-SWE-7, 2023 WL 4414409, at *2 (Bankr. N.D. Tex. July 7, 2023); *Burkhalter v. Burkhalter (In re Burkhalter)*, 635 B.R. 284, 289 (Bankr. N.D. Miss. 2022); *Williams v. Jackson (In re Jackson)*, 625 B.R. 906, 919 (Bankr. C.D. Ill. 2021).

11

The first step, establishing a debt is owing by the debtor to the creditor, is not at issue on appeal. The State District Court entered a final summary judgment in favor of Grange and against the Debtors in the amount of $579,339.15 plus costs of $2,783.64 under an insurance contract and a Colorado insurance fraud statute. The parties do not dispute the claim preclusive effect of that judgment. The second step, which requires the creditor to show that the debt is excepted from the discharge, *is* at issue on appeal. The Bankruptcy Court ruled, by summary judgment, that the debt at issue is excepted from the discharge under § 523(a)(2)(A).

>    A. *The Bankruptcy Court erred insofar as it ruled that Grange was not required to prove reliance to establish a debt is nondischargeable under § 523(a)(2)(A) based on "actual fraud."*

The Bankruptcy Court ruled that Grange was not required to prove reliance to establish a nondischargeable "actual fraud" claim under § 523(a)(2)(A). The Bankruptcy Court explained that under Colorado law, insurance fraud requires proof of a materially false statement by the insured with the intent to deceive the insurer and induce it to pay more under the insurance policy than the amount of the loss sustained. The Bankruptcy Court determined that the State Court Judgment established that the Debtors were liable for insurance fraud and gave the State Court Judgment issue-preclusive effect to establish that the Debtors acted with fraudulent intent by submitting fraudulent insurance claims for payment to deceive Grange and induce it to pay more under the Policy. The Bankruptcy Court further concluded those preclusive findings were sufficient to meet the elements of "actual fraud" under § 523(a)(2)(A) without Grange's justifiable reliance. We disagree.

12

Section 523(a)(2)(A) provides,

> (a) A discharge under section 727, 1141, 1192, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
>
>    . . .
>
>    (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
>
>       (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition[.][24]

"Actual fraud," as used in § 523(a)(2)(A), overlaps with false pretenses and false representations. As explained in the discussion of Supreme Court authority below, even if the creditor asserts "actual fraud" as a basis for its nondischargeability claim, a claim of nondischargeability under § 523(a)(2)(A) requires proof of justifiable reliance if the alleged fraud was perpetrated by a false representation.[25]

In *Husky International Electronics, Inc. v. Ritz*,[26] the United States Supreme Court resolved a circuit split regarding whether "actual fraud" in § 523(a)(2)(A) necessarily requires a misrepresentation.[27] The Supreme Court ruled that "actual fraud" is difficult to define precisely but "connotes deception or trickery" that is "done with wrongful intent," and the fraud must be "actual" "in contrast to 'implied' fraud or fraud 'in law.'"[28] The

---

[24] 11 U.S.C. § 523(a)(2)(A).

[25] *See Field v. Mans*, 516 U.S. 59, 61 (1995) (holding that there is a justifiable reliance requirement to except a debt from discharge under § 523(a)(2)(A) based on a false representation, which is a form of inducement-based fraud); *see also Johnson v. Riebesell (In re Riebesell)*, 586 F.3d 782, 789 n.3 (10th Cir. 2009).

[26] 578 U.S. 355 (2016).

[27] *Id.* at 360.

[28] *Id.*

Supreme Court held: (a) "[t]he term 'actual fraud' in § 523(a)(2)(A) encompasses forms of fraud, like fraudulent conveyance schemes, that can be effected without a false representation,"[29] and (b) proof of reliance is not required to except a debt from discharge under § 523(a)(2)(A) based on a fraud that is not an inducement-based fraud, such as a fraudulent conveyance scheme.[30]

These holdings are consistent with and expand upon the Supreme Court decision *Field v. Mans*,[31] which held that excepting a debt from discharge under § 523(a)(2)(A) based on a false representation requires proof of justifiable reliance.[32] *Husky* distinguished *Field* on the basis that *Field* involved a misrepresentation, which is a form of inducement-based fraud (that is, a fraud that induces a creditor's reliance) requiring proof of justifiable reliance, whereas *Husky* involved a fraud perpetrated through a fraudulent conveyance scheme, which is not an inducement-based fraud.[33]

Read together, *Husky* and *Field* stand for the proposition that proof of reliance is not required by § 523(a)(2)(A) if the fraud at issue is not of a type that induces reliance, but proof of justifiable reliance *is* required if the fraud at issue is a false representation because that is a form of fraud that induces a creditor's reliance. Proof of justifiable reliance, therefore, is required to except a debt from discharge based on a false

---

[29] *Id.* at 359.
[30] *Id.* at 365–66.
[31] 516 U.S. 59 (1995).
[32] *Id.* at 61.
[33] *See Husky*, 578 U.S. at 361, 365–66.

14

representation even if the creditor alleges the misrepresentation constituted "actual fraud."[34]

Here, Shaun Woods submitted fabricated documentation to Grange in support of her replacement cash value insurance claims relating to the Mower and Ring to induce Grange to pay the claims. Submission of the fabricated documentation constituted false representations that the documents were genuine. That is a form of inducement-based fraud. Accordingly, because the fraud is premised on false representations, to establish a claim under § 523(a)(2)(A), Grange must prove it justifiably relied on the fabricated documentation in making payment.

The Bankruptcy Court relied on the Tenth Circuit BAP opinion *In re Thompson*[35] for the proposition that Grange was not required to prove reliance. In *Thompson*, we reversed a summary judgment in favor of the debtor holding that "actual fraud" under § 523(a)(2)(A) predicated on the debtor draining bank accounts and diverting the funds to other businesses owned by the debtor or his brother may constitute nondischargeable "actual fraud" under § 523(a)(2)(A) even though it did not induce the creditor to part with

---

[34] Various courts have reached a similar conclusion. *See e.g.*, *T. Levy Assocs., Inc. v. Kaplan (In re Kaplan)*, 634 B.R. 673, 687 (Bankr. E.D. Pa. 2021); *GSY Corp. v. Hazan, Dafna v. Hazan (In re Hazan)*, Nos. 1-15-01070-NHL, 1-15-01071-NHL, 2018 WL 4718976, at *6 (Bankr. E.D.N.Y. Sept. 28, 2018); *Lenchner v. Korn (In re Korn)*, 567 B.R. 280, 302 (Bankr. E.D. Mich. 2017); *Argento v Cahill (In re Cahill)*, No. 15-08298-REG, 2017 WL 713565, at *7 (Bankr. E.D.N.Y. Feb. 22, 2017). *But see Rajsic v. Valley Forge Ins. Co.*, 574 B.R. 312, 319 (S.D. Fla. 2017) (refusing to make a specific finding of justifiable reliance in the case of actual fraud but conceding that "[a]ny other finding would lead to absurd results and frustrate the Bankruptcy Code.").

[35] 555 B.R. 1 (10th Cir. BAP 2016).

property or extend credit.[36] The fraud alleged in *Thompson*, like a fraudulent conveyance scheme, is not an inducement-based fraud. By contrast, the fraud perpetrated by Shaun Woods is an inducement-based fraud, which requires proof of justifiable reliance to establish a nondischargeable debt under § 523(a)(2)(A).

Because the fraud at issue here is inducement based, we conclude the Bankruptcy Court applied the incorrect standard.

> B. *The facts not subject to genuine dispute establish some, but not all, of the elements Grange must prove to establish a nondischargeable debt under § 523(a)(2)(A).*

Tenth Circuit authority is clear that to prevail on a nondischargeability claim under § 523(a)(2)(A) based on a misrepresentation, where the debtor is the perpetrator of the fraud,[37] the creditor must establish the following elements by a preponderance of the evidence:[38]

(a) The debtor made a false representation;
(b) The debtor made the representation with the intent to deceive the creditor;
(c) The creditor relied on the representation;
(d) The creditor's reliance was justifiable; and
(e) The debtor's representation caused the creditor to sustain a loss.[39]

---

[36] *Id.* at 10, 12.

[37] This limitation is based on *Bartenwerfer v. Buckley*, 598 U.S. 69 (2023), which holds that in certain circumstances, a debt of an innocent debtor may be nondischargeable under § 523(a)(2)(A). As of the date of this opinion, the Tenth Circuit has not specifically addressed this issue.

[38] *See Grogan v. Garner*, 498 U.S. 279, 287 (1991) (establishing preponderance of the evidence standard for nondischargeability claims).

[39] *In re Young*, 91 F.3d 1367, 1373 (10th Cir. 1996). *Young* expressed the fourth element as requiring "reasonable" reliance. The Tenth Circuit has since clarified that under *Field v. Mans*, 516 U.S. 59, 74–75 (1995), the fourth element requires "justifiable" reliance. *Johnson v. Riebesell* (*In re Riebesell*), 586 F.3d 782, 789 n.3, 792 (10th Cir. 2009).

16

Here, the Debtors did not contest any of the facts included in Grange's motion for summary judgment, and the Bankruptcy Court treated those facts as undisputed for purposes of the motion for summary judgment in accordance with Federal Rule of Civil Procedure 56(e)(2).

1. <u>The First and Second Requirements: The State Court Judgment preclusively establishes that Shaun Woods made false representations with intent to deceive Grange.</u>

The Bankruptcy Court determined that the issue-preclusive effect of the State Court Judgment establishes that Shaun Woods made false representations with the intent to deceive Grange when she submitted fabricated documents in support of the Debtors' replacement cash value claims for the Mower and Ring. We agree.[40]

Issue preclusion, also known as collateral estoppel, bars relitigation of issues of fact determined in a prior state court action resulting in a final judgment, and may be invoked to establish the nondischargeability of a particular debt in a subsequent bankruptcy case.[41] A federal court reviews the preclusive effect of a state court judgment under the issue preclusion doctrine of the state in which the judgment was rendered—in

---

[40] The Bankruptcy Court also determined that the preclusive effect of the State Court Judgment established that Lee Woods participated in the fraud, and, in any event, Lee Woods' debt is nondischargeable even if he is an innocent spouse. We do not need to, and therefore do not, reach those issues.

[41] *Klemens v. Wallace (In re Wallace)*, 840 F.2d 762, 764 (10th Cir. 1988); *see also Grogan*, 498 U.S. at 284 n.11 ("[C]ollateral estoppel [issue preclusion] principles do indeed apply in discharge exception proceedings pursuant to § 523(a)."); *Taylor v. Jasper (In re Jasper)*, Nos. NM-06-092, 07-05-14282-SA, 05-1192-S, 356 B.R. 787, at *3 (10th Cir. BAP 2007) (unpublished) ("Collateral estoppel [issue preclusion] may be applied in bankruptcy proceedings to determine dischargeability of a debt."), *aff'd*, 312 F. App'x. 97 (10th Cir. 2008).

17

this case, Colorado.[42] In Colorado, for a court to give a final judgment in a prior

proceeding issue-preclusive effect, four requirements must be satisfied:

> (1) The issue precluded is identical to an issue actually litigated and necessarily adjudicated in the prior proceeding; (2) The party against whom estoppel was sought was a party to or was in privity with a party to the prior proceeding; (3) There was a final judgment on the merits in the prior proceeding; and (4) The party against whom the doctrine is asserted had a full and fair opportunity to litigate the issues in the prior proceeding.[43]

Here, the Debtors dispute only whether the issues precluded are identical to the issues

actually litigated in the State Court Litigation. The Debtors contend that the Bankruptcy

Court erred by applying issue preclusion because insurance fraud under Colorado law

differs from "actual fraud" under § 523(a)(2)(A).

> The Colorado insurance fraud statute provides:

> A fraudulent insurance act is committed if a person knowingly and with intent to defraud presents, causes to be presented, or prepares with knowledge or belief that it will be presented to or by an insurer, a purported insurer, or any insurance producer any written statement as part or in support of an application for the issuance or the rating of an insurance policy or a claim for payment or other benefit pursuant to an insurance policy that the person knows to contain false information concerning any fact material to the application or claim or if the person knowingly and with intent to defraud or mislead conceals information concerning any fact material related to the application or claim.[44]

There is an identity of issues with respect to (1) Grange's insurance fraud claim

adjudicated in the State Court Litigation and (2) the requirements of false representation

---

[42] *Cherry v. Neuschafer (In re Neuschafer)*, 514 B.R. 719, at \*5 (10th Cir. BAP 2014); *Cobb v. Lewis (In re Lewis)*, 271 B.R. 877, 883 (10th Cir. BAP 2002).

[43] *Bebo Const. Co. v. Mattox & O'Brien, P.C.*, 990 P.2d 78, 84–85 (Colo. 1999) (quoting *Michaelson v. Michaelson*, 884 P.2d 695, 700–01 (Colo. 1994)).

[44] Colo. Rev. Stat. Ann. § 10-1-128 (1).

with intent to deceive needed to establish a claim under § 523(a)(2)(A). The Colorado insurance fraud statute required Grange to prove that Shaun Woods knowingly and with intent to defraud presented a false claim that contained or omitted materially false information. That is the functional equivalent of requiring proof of a false representation or false pretenses with intent to deceive.[45]

The Debtors also assert Grange did not establish sufficient scienter to prove the Debtors' intent to deceive Grange in the State Court Litigation, and thus, the Bankruptcy Court committed error by relying on the State Court Judgment to establish the Debtors' intent. We disagree. The Debtors could not relitigate the State Court Judgment, and findings therein, before the Bankruptcy Court because the findings were entitled to issue preclusive effect as discussed above.[46] The Debtors' recourse, if they disagreed with the State Court Judgment, was to appeal. In fact, they did, and the Colorado Court of Appeals affirmed the State Court Judgment.

Thus, the State Court Judgment preclusively established that Shaun Woods made false representations with intent to deceive Grange by submitting fabricated

---

[45] "False pretenses under Section 523(a)(2)(A) are implied misrepresentations intended to create and foster a false impression" and "'can be defined as any series of events, when considered collectively, that create a contrived and misleading understanding of a transaction, in which a creditor is wrongfully induced to extend money or property to the debtor.'" *Bank of Cordell v. Sturgeon (In re Sturgeon)*, 496 B.R. 215, 223 (10th Cir. BAP 2013) (quoting *Stevens v. Antonious (In re Antonious)*, 358 B.R. 172, 182 (Bankr. E.D. Pa. 2006)). "Intent to deceive can be inferred from the totality of the circumstances." *Id.* at 222 (citing *Copper v. Lemke (In re Lemke)*, 423 B.R. 917, 922 (10th Cir. BAP 2010)).

[46] *In re Miller*, 666 F.3d 1255, 1261 (10th Cir. 2012) (observing a party's attempt to relitigate an issue determined in state court is to be analyzed under issue preclusion principles).

19

documentation to Grange in support of the replacement cash value claims for the Mower and Ring. That precludes the Debtors from relitigating the first two requirements of Grange's nondischargeability claim under § 523(a)(2)(A).

2. <u>The Third Requirement: The facts not in genuine dispute show that Grange relied on the false representation regarding the Mower, but not the Ring.</u>

After receiving the Debtors replacement cash value claims for a variety of items of personal property with supporting documentation, which included claims for the Mower and Ring, Grange sent the Debtors a check for $2,817.48. The Debtors did not dispute this fact. Although the fact is undisputed, the fact does not by itself show which claims were included in the payment.

Shaun Woods' submission of the supporting documentation relating to the Mower and the Ring constituted the false representations upon which Grange's nondischargeability claim under § 523(a)(2)(A) is based. A review of Exhibits C, D, and F to the MSJ shows the check for $2,817.48 included $1,186.58 in payment for the claim on the Mower, but it did not include any amount in payment for the claim on the Ring or any other claims for which Grange required further documentation before making payment. Thus, Grange relied on the false representation regarding the Mower (the falsified receipt for the Mower) by including $1,186.58 in the check on account of the claim for the Mower, but it did not rely on the false representation regarding the Ring (the falsified invoice for the Ring) as it made no payment on that claim.

20

3. <u>The Fourth Requirement: The facts not in genuine dispute do not show that Grange's reliance on the false representation regarding the Mower was justifiable.</u>

The Debtors assert there are genuine disputes of material fact relating to the issue of justifiable reliance that precludes summary judgement. The Bankruptcy Court found, in the alternative, that Grange justifiably relied on Shaun Woods' false representations based on the following:

- The Debtors sent Grange an email asking whether they could submit "contents documentation" in order to get Grange to pay reimbursement for the items submitted. Grange responded that it would entertain such submissions made pursuant to the Policy.

- The Debtors submitted their reimbursement cost claims for the Mower and Ring, along with numerous other items, with the intent of receiving reimbursement for those items from Grange.

- One day later, and after considering the documentation, Grange sent the Debtors a letter and check for $2,817.48, which represented the replacement cash value difference owed to the Debtors for these and other items.

At most this shows reliance, not justifiable reliance.[47] But because we may affirm a grant of summary judgment on grounds other than those relied on by the Bankruptcy Court,[48] we will independently analyze whether the facts not in genuine dispute before the Bankruptcy Court showed Grange justifiably relied on the false representation relating to the Mower.

---

[47] But Grange's proffered evidence shows it made no payment of the replacement cash value claim for the Ring. Therefore, there was no reliance with respect to that claim.

[48] *Stewart v. City of Okla. City*, 47 F.4th 1125, 1132 (10th Cir. 2022) ("[W]e may affirm a grant of summary judgment 'on grounds other than those relied on by the district court when the record contains an adequate and independent basis for that result.'") (quoting *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004)).

21

(a) *The Justifiable Reliance Standard*

To prove justifiable reliance, a creditor need not show that it acted consistent with ordinary prudence and care.[49] Instead, to determine whether a creditor's actual reliance was justifiable, the Court applies a subjective standard that takes into account the qualities and characteristics of the particular creditor,[50] not a community standard of conduct applicable to all cases.[51] To justifiably rely, a party is "required to use its senses, and cannot recover if it blindly relies upon a misrepresentation, the falsity of which would be patent to it if it had utilized its opportunity to make a cursory examination or investigation."[52] In other words,

> justifiable reliance is the standard applicable to a victim's conduct in cases of alleged misrepresentation and . . . "[i]t is only where, under the circumstances, the facts should be apparent to one of its knowledge and intelligence from a cursory glance, or it has discovered something which should serve as a warning that it is being deceived, that it is required to make an investigation of its own."[53]

Justifiable reliance on a false representation requires a creditor to make an investigation only if: (1) (a) the creditor discovers a "red flag" (which is a warning sign

---

[49] *Backlund v. Stanley-Snow (In re Stanley-Snow)*, 405 B.R. 11, 23 (1st Cir. BAP 2009); *see also Field v. Mans*, 516 U.S. 59, 71 (1995) (justifiable reliance does not require conduct that conforms with the standard of the reasonable person).

[50] *Johnson v. Riebesell* (*In re Riebesell*), 586 F.3d 782, 792 (10th Cir. 2009).

[51] *Field*, 516 U.S. at 71.

[52] *Id.* (quoting Restatement (Second) of Torts (1976), § 545A, cmt. a, with the pronouns "he," him," and "his" changed to "it."); *Com. Cash Flow, L.L.C. v. Matkins (In re Matkins)*, 605 B.R. 62, 94 (Bankr. E.D. Va. 2019) ("A plaintiff who disregards warning signs or 'red flags' cannot satisfy the justifiable reliance standard.").

[53] *Field*, 516 U.S. at 71 (quoting W. Prosser, Law of Torts § 108, p. 718 (4th ed.1971), with the pronouns "he," him," and "his" changed to "it.").

22

that calls into question the veracity of the representation)[54] or the creditor otherwise is, in fact, suspicious of a deception,[55] or (b) under the circumstances, a red flag should have been obvious to the creditor, taking into account the creditor's knowledge and sophistication, so that the creditor should have been suspicious of a deception;[56] and (2) the red flag or other suspicion indicates that reliance is unwarranted without further investigation.[57] If, after making an investigation, the creditor concludes that the representation is credible, the reliance is justifiable.[58]

> (b) *There is a genuine dispute of material fact as to whether Grange justifiably relied on the false representation relating to the Mower.*

There is a genuine dispute of material fact regarding whether Grange justifiably relied on the false representation relating to the Mower. Justifiable reliance on the falsified receipt for the Mower (the false representation) required Grange to make an

---

[54] *Gross v. Osborne (In re Osborne)*, 520 B.R. 861, 872 (Bankr. D.N.M. 2014) ("'[R]ed flags' raise questions as to the veracity of the representations.").

[55] *See In re Matkins*, 605 B.R. at 94 ("[A] plaintiff must investigate when he is warned or suspicious of a deception."); *Ardizzone v. Scialdone (In re Scialdone),* 533 B.R. 53, 62 (Bankr. S.D.N.Y. 2015) ("[O]nce he became aware of the inaccuracies contained within the document, he could no longer blindly rely on the Debtor's representations. After that point, he had a duty to investigate . . . .").

[56] *See Wang v. Ling (In re Ling)*, 646 B.R. 540, 547 (Bankr. S.D. Fla. 2022) ("Whether a creditor justifiably relied on a debtor's misrepresentation turns on whether the creditor should have known the representation was false 'from a cursory glance' or a red flag should have warned the creditor.") (quoting *Field*, 516 U.S. at 71).

[57] *See generally Saenz v. Gomez*, 899 F.3d 384, 392 (5th Cir. 2018) ("a person may not justifiably rely on a representation if there are 'red flags' indicating such reliance is unwarranted.") (internal quotation marks and citation omitted).

[58] *In re Matkins,* 605 B.R. at 94 ("If the investigation leads the plaintiff to conclude that the debtor's representations are credible, the plaintiff can satisfy the justifiable reliance standard.").

23

investigation only if (a) before paying the replacement cash value claim for the Mower Grange spotted a red flag or otherwise was, in fact, suspicious of a deception, or (b) a red flag should have been obvious to Grange and, therefore, it should have been suspicious of a deception when it paid the claim. If an investigation was required and it appeared to Grange after making an investigation that the receipt for the Mower was authentic, the reliance was justifiable.

Grange's proffered evidence shows that the $2,817.48 check included $1,186.58 for the replacement cash value claim for the Mower.[59] The documentation Shaun Woods submitted in support of the claim consisted of a fabricated receipt showing the Debtors' payment by cashier's check for $3,825.00 to Jose Sergio Verboonen for the Mower and a copy of the cashier's check. The cashier's check was used to pay for a surgical procedure Dr. Verboonen performed on Shaun Woods in Mexico, not to pay for the Mower.

Material fact number 19 included in Grange's MSJ states that on the same day Grange sent the $2,817.48 check to the Debtors, Grange served the Debtors

> with written discovery requests concerning Defendants' purchase of the Kubota Mower from Jose Sergio Verboonen [that asked the Debtors] to supply the address, telephone number, and business entity associated with Jose Sergio Verboonen as well as the serial number for the Kubota Mower that [the Debtors] represented that they had purchased.[60]

Service of those discovery requests suggests that before Grange mailed the check to the Debtors, Grange, a sophisticated party in the business of examining insurance claims, may have spotted a red flag or otherwise was suspicious of a deception indicating

---

[59] MSJ, *in* Appellants' App. at 486.
[60] *Id.*, *in* Appellants' App. at 487.

that further investigation into the legitimacy of the claim was warranted. If so, justifiable reliance on the falsified receipt for the Mower (the false representation) required Grange to conclude, after an investigation, that the receipt for the Mower appeared to be authentic. That creates a genuine dispute of material fact.

    4.   <u>The Fifth Requirement: Facts not in genuine dispute do not show that Shaun Woods' false representations caused Grange to sustain a loss.</u>

The fifth and final requirement for a debt to be nondischargeable under § 523(a)(2)(A) is that the "representation caused the creditor to sustain a loss."[61] The Debtors argue that Grange did not sustain a loss as a result of any false representations because the Debtors never cashed the $2,817.48 check. Grange argues it sustained a loss when the check was delivered, and payment thereby was made, regardless of whether the check was cashed. Apart from the evidence that the Debtors offered to return or destroy the check, there is no evidence before us regarding whether the check was cashed.

The Supreme Court in *Cohen v. de la Cruz*[62] gave guidance for applying the fifth requirement, explaining that under § 523(a)(2)(A) "'[t]o the extent obtained by' modifies 'money, property, services, or . . . credit'—not 'any debt'—so that the exception encompasses 'any debt for money, property, services, or . . . credit, to the extent [that the money, property, services, or . . . credit is] obtained by' fraud."[63] Applying this construction of § 523(a)(2)(A), the Supreme Court concluded that "[t]he phrase thereby makes clear that the share of money, property, etc., that is obtained by fraud gives rise to

---

[61] *Fowler Bros. v. Young (In re Young)*, 91 F.3d 1367, 1373 (10th Cir. 1996).
[62] 523 U.S. 213 (1998).
[63] *Id.* at 218 (revisions in original).

25

a nondischargeable debt. Once it is established that specific money or property has been obtained by fraud, however, 'any debt' arising therefrom is excepted from discharge."[64]

Applying these principles to the false representations made by Shaun Woods, the requirement that the false representations caused Grange to sustain a loss more specifically requires that Grange sustained a loss in the form of specific money, property, services, or an extension, renewal, or refinancing of credit that the Debtors obtained by the false representations. Only when that is established is any debt arising from the fraud excepted from discharge.

Grange failed to satisfy the fifth requirement with respect to the Ring because its proffered evidence does not show it made any payment to the Debtors on account of the falsified invoice for the Ring.[65] Grange therefore did not show it sustained a loss of specific money, property, or credit with respect to the Ring.

Further, there is a genuine dispute of material fact regarding whether Grange sustained a loss caused by the Debtors' submission of the falsified receipt for the Mower. Grange's evidence shows that Grange included $1,186.58 for the claim for the Mower in the $2,817.48 check Grange mailed to the Debtors to pay the replacement cash value claims.[66] Material fact number 20 included in Grange's MSJ states:

---

[64] *Id.*

[65] Exhibit C attached to the MSJ contains Grange's letter in response to the copies of the submitted receipts with comments on those receipts that could not be processed. The receipt submitted for the Ring shows Grange could not process it at the time it processed the claims for which the check was sent. *See* Appellants' App. at 580. Thus, the check sent with the letter does not appear to include any payment for the Ring claim.

[66] Exhibit F attached to the MSJ contains the content valuation report setting forth the actual cash value and replacement cost value for the Debtors' property claims. The

> Six days [after Grange mailed the $2,817.48 check], on December 4, 2018, Defendants (through counsel) sent an email stating that there was an item that was included in the Woods last submittal that was mistakenly included in the request. This was the claim for Verbooten (sic). Would you like the Woods to destroy the check and resubmit the correct amount or would you prefer the check returned with the correct submittal?[67]

This raises a genuine dispute of material fact as to whether Grange's bank account was ever debited for $2,817.48 or any other amount that represented payment of the replacement cash value claim for the Mower. The issue is not whether Grange delivered a check in payment of the claim. The issue is whether it sustained a loss. If Grange's bank account was never debited for $2,817.48 or any other amount that represented payment of the replacement cash value claim for the Mower, the falsified document submitted in support of the claim (which is the false representation) did not cause Grange to sustain a loss.

### C. Remaining Issues

The Debtors raise two other issues on appeal. First, the Debtors assert that the amount of the nondischargeable debt should be limited to the amount of funds the Debtors obtained from Grange by the alleged fraud (at most $1,186.58) and should not include the entire $582,122.79 Judgment Debt. Because there are genuine disputes of material fact as to whether Grange suffered an actual loss, which appears from the record to be at most $1,186.58, we decline to reach the issue of whether an actual loss of $1,186.58 can give rise to a nondischargeable debt of $582,122.79. Second, the Debtors

---

difference in the report between the replacement cost value and the actual cash value for the Mower is $1,186.58. *See* Appellants' App. at 586.

[67] MSJ at 9, *in* Appellants' App. at 487.

27

assert that Lee Woods is an innocent spouse who should not be saddled with a nondischargeable debt.[68] Because we reverse the Bankruptcy Court's decision granting summary judgment on the § 523(a)(2)(A) claim, we also decline to reach this issue.

## V.    Conclusion

For the foregoing reasons, we conclude the Bankruptcy Court did not err by giving preclusive effect to the State Court Judgment on the issues of false representations made with intent to deceive, but we must REVERSE the Bankruptcy Court's decision granting summary judgment in favor of Grange on its § 523(a)(2)(A) nondischargeability claim and REMAND to the Bankruptcy Court for further proceedings consistent with this opinion.

---

[68] The Bankruptcy Court relied on the preclusive effect of the State Court Judgment and, in the alternative, on *Bartenwerfer v. Buckley*, 598 U.S. 69 (2023), to rule that the debt was nondischargeable as to Lee Woods. In *Bartenwerfer*, the Supreme Court held that under certain circumstances debts of an innocent debtor can be nondischargeable.

28